NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3010
_____

SUPERIOR OFFSHORE INTERNATIONAL, INC.,
a Delaware corporation, on behalf of itself and all others similarly situated,

Appellant

v.

BRISTOW GROUP, INC., a Delaware corporation;
ERA HELICOPTERS, LLC., a Delaware, LLC.;
SEACOR HOLDINGS, INC., a Delaware corporation;
ERA GROUP, INC., a Delaware corporation;
ERA AVIATION, INC., a Washington corporation;
PHI, INC., a Louisiana corporation
_____

On Appeal from the United States District Court
for the District of Delaware
(No.1-09-cv-00438)
District Judge:  Honorable Legrome D. Davis
_____

Argued March 20, 2012
_____

Before:  RENDELL, FISHER, and CHAGARES, <u>Circuit</u> <u>Judges</u>.

(Opinion filed: July 27, 2012)

William E. Hoese, Esquire (Argued)
Joseph C. Kohn, Esquire
Robert J. LaRocca, Esquire
Kohn, Swift & Graf
One South Broad Street
Suite 2100
Philadelphia, PA 19107

Counsel for Appellants

Andre G. Bouchard, Esquire
Bouchard, Margules & Friedlander
222 Delaware Avenue
Suite 1400
Wilmington, DE 19801

Sean M. Brennecke, Esquire
Klehr, Harrison, Harvey & Branzburg
919 North Market Street
Suite 1000
Wilmington, DE 19083


Jennifer D. Chippendale, Esquire
Donald C. Klawiter, Esquire
Sheppard, Mullin, Richter & Hampton
1300 I Street, N.W.
11th Floor – East
Washington, DC 20005

Counsel for Appellee Bristow Group Inc.

Steven L. Caponi, Esquire
Elizabeth A. Sloan, Esquire
Blank Rome
1201 North Market Street
Suite 800
Wilmington, DE 19801

Helene D. Jaffe, Esquire (Argued)
Proskauer Rose
Eleven Times Square
17th Floor
New York, NY 10036

Counsel for Appellees Era Helicopters LLC, Seacor Holdings Inc., Era Group Inc, and Era Aviation Inc.

Tarak Anada, Esquire
Pauline F. Hardin, Esquire

David G. Radlauer, Esquire
Jones Walker
Suite 4900
201 St. Charles Avenue
New Orleans, LA 70170

Comrie B. Flinn, Esquire
Pilar G. Kraman, Esquire
Young, Conaway, Stargatt & Taylor
1000 West Street, P.O. Box 391
17th Floor, Brandywine Building
Wilmington, DE 19801

      Counsel for Appellee PHI Inc.

_____

OPINION

_____

CHAGARES, Circuit Judge.

Superior Offshore International ("SOI") appeals the District Court's grant of summary judgment in favor of the defendants on SOI's antitrust claims related to the defendants' alleged price fixing of helicopter services rates for offshore oil and gas industries. The District Court found that SOI had not shown any evidence of an illegal agreement in violation of the Sherman Antitrust Act (the "Sherman Act"), 15 U.S.C. §§ 1-7, and denied SOI's request to conduct additional discovery under Federal Rule of Civil Procedure 56(d). We will affirm.

I.

We write solely for the parties' benefit and thus set forth only the facts necessary to our disposition. SOI filed its initial complaint on June 12, 2009, alleging that the

defendants conspired to fix prices for their respective helicopter services, which provided air transportation to the oil and gas industries operating in the Gulf of Mexico. Such helicopter services are generally purchased for fixed periods of time through charter agreements that specify a set price plus any additional hourly charges. Collectively, the defendants have approximately a 90% market share in their industry.

The original complaint asserted that between January 1, 2001, and December 31, 2005, in the face of softening demand, the defendants conspired to raise prices by 50%. Of particular importance to SOI was the fact that in the first half of 2001, the defendants instituted two "across-the-board" increases totaling 30%. To bolster its claim that these increases were the result of concerted activity, SOI cited the high concentration of the market, the close-knit community in this business sector (wherein employees often moved between companies), the ongoing investigation by the United States Department of Justice's Antitrust Division into these activities,[1] various quotes by company executives touting their increased profits and the importance of maintaining their respective market share, and the following unattributed quotation in a trade magazine: "If we were to say that the helicopter operators all got together and agreed to these increases, that would be illegal; it would be price fixing. Let's just say that everyone more or less agreed to the necessity of a more or less equal rate hike for everyone." Appendix ("App.") 54. Collectively, the District Court found this evidence was

---

[1] On August 4, 2010, the Antitrust Division closed its five-year investigation of potential antitrust violations without taking any action.

insufficient to state an antitrust claim and dismissed the case. Superior Offshore Int'l, Inc. v. Bristow Grp., Inc., 738 F. Supp. 2d 505, 510 (D. Del. 2010).

Following dismissal of the initial complaint, the District Court allowed SOI to amend its complaint to add allegations that a discussion about price fixing occurred between executives at defendants Bristow Group, Inc. ("Bristow") and PHI, Inc. ("PHI"). The amended complaint, filed on December 2, 2010, alleged that a confidential witness later revealed to be Mike Tuttle had overheard Gene Graves, Bristow's vice president of sales, engage in a conversation in 2001 with "a senior sales and marketing executive of PHI, who [Tuttle] believed may have been Jim [Shugart], PHI Sales Manager." App. 117. Tuttle believed the parties to that conversation discussed raising helicopter rates in unison at their respective companies and at a third company, Era Helicopters, LLC ("Era").[2] Specifically, the amended complaint alleges that Graves did the following in the conversation Tuttle overheard:

> (1) Agreed with PHI to implement a major price increase in [o]ffshore [h]elicopter [s]ervices in the Gulf of Mexico;
>
> (2) Confirmed with PHI that Era had also agreed to make a major price increase at or about the same time;
>
> (3) Represented that Air Logistics' President Jim Clement authorized Graves to enter into the agreement between Air Logistics, PHI, and Era to implement a major price increase in or about the first half of 2001;
>
> (4) Stressed the importance of Air Logistics, PHI, and Era raising prices *in unison* in order to maintain their respective customer bases; and
>
> (5) Discussed and agreed on the timing of price increase announcements.

---

[2] Era and related entities Era Aviation, Inc. and Era Group Inc. are wholly owned by defendant SEACOR Holdings.

Id. (emphasis in original). The amended complaint also contained the same factual allegations as the original complaint.

Because the District Court found that only the newly added allegations allowed the amended complaint to escape dismissal, it permitted discovery related only to these alleged new facts. The Court allowed the parties to depose Tuttle, Shugart, Graves, and Clement, but refused to allow additional document requests by SOI. Id. at 157.[3] Ultimately, only Tuttle and Graves were deposed, as it became clear during this period of discovery that Shugart and Clement had not been involved in the conversation that Tuttle heard.

During Tuttle's deposition, he stated that he had overheard a conversation between Graves and an unknown representative from a competitor that he felt "wasn't right," but he could not describe any specifics, including the exact words Graves used. Id. at 204-05. Tuttle indicated that the call had included a discussion of prices and collusive activity to avoid pursuing the other company's customers, and that the conversation worried him because he believed it could create liability for price fixing. He also stated that very shortly after the phone call occurred, all of the defendants raised their rates. However, Tuttle admitted that several details in the amended complaint were incorrect. First, he conceded that Graves could not have been talking to Shugart because Shugart did not

---

[3] Following SOI's letter request for additional discovery, and the defendants' opposition thereto, the Court issued an Order on December 30, 2010, stating that "[t]he scope of all permitted depositions shall be strictly limited to the allegations set forth in Plaintiff's Amended Complaint ¶¶ 30-32" and that "[d]ocument discovery at this time is not warranted." App. 157.

6

work for PHI at the time of the phone call. Tuttle also admitted that Graves could not have mentioned Clement, as alleged in the complaint, because Clement was also no longer employed by PHI. Tuttle further stated that he "couldn't really say that all three" defendants were involved in an agreement to raise prices in unison, although he reiterated his general sense that the "gist" of the conversation he overheard "was price fixing." Id. at 205. In his deposition, Graves denied that such a conversation occurred.

On February 11, 2011, the defendants filed a motion for summary judgment, which SOI opposed with a request for full discovery pursuant to Federal Rule of Civil Procedure 56(d). In his affidavit, SOI's counsel sought production of documents in the following nine categories:

a. Transactional data reflecting prices charged by Defendants for offshore helicopter services, and Defendants' costs;

b. Information, including but not limited to, calendars, day-timers, telephone records, and correspondence, about any meeting, discussion or other communication between and among Defendants concerning the provision of those services;

c. Price sheets, price announcements, and price change letters generated by any Defendant concerning the provision of those services;

d. Information about Defendants' organizational structures;

e. Documents provided to or received from any government agency or representative, including, but not limited to, the Federal Bureau of Investigation, the United States Department of Justice, any law enforcement agency of any state, or any grand jury regarding any investigation into a possible violation of the antitrust laws;

f. Defendants' financial statements relating to offshore helicopter services;

7

g. Information about Defendants' membership and involvement in the activities of trade associations relating to offshore helicopter services;

h. Documents relating to any internal investigation conducted by any Defendant of actual or potential violations of law or company policy with respect to offshore helicopter services; and

i. Information relating to Defendants' pricing, marketing and sales strategy.

Id. at 336.

The District Court declined to allow additional discovery and granted summary judgment in favor of the defendants, finding that SOI had not offered any evidence to show there was a "contract, combination . . . , or conspiracy" to fix prices. 15 U.S.C. § 1. The District Court found summary judgment was appropriate despite the lack of full discovery because the only evidence of collusion mentioned in the amended complaint was Tuttle's overheard conversation, and Tuttle's deposition revealed he remembered very little about the nature of that conversation.

SOI now appeals the denial of its Rule 56(d) motion and the District Court's grant of summary judgment in favor of the defendants.

II.[4]

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Our review of a grant of summary judgment is plenary. Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). In reviewing a District Court's grant

---

[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

8

of summary judgment, we evaluate the evidence using the same standard as the District Court; that is, by viewing the evidence and making reasonable inferences from the evidence in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992); Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1230 (3d Cir. 1993). "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). However, a court need not "turn a blind eye to the weight of the evidence." BMW, 974 F.2d at 1363. In order for a dispute to be "genuine," the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" but must instead "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quotation marks omitted) (emphasis in original). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Id. at 587 (quotation marks omitted).

There is an added layer of complexity when determining whether summary judgment is appropriate in an antitrust case because "motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." Id. Such difficulties are particularly acute in cases where, as here, the plaintiff has failed to put forth direct evidence of conspiracy but is instead relying solely on circumstantial evidence. This is so because although "reasonable inferences" arising

9

from circumstantial evidence must be drawn in favor of the nonmoving party, "what constitutes a reasonable inference in the context of an antitrust case . . . is somewhat different from cases in other branches of the law in that 'antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case.'" In re Baby Food Antitrust Litig., 166 F.3d 112, 124 (3d Cir. 1999) (hereinafter "Baby Food") (quoting Matsushita, 475 U.S. at 588). "The acceptable inferences which we can draw from circumstantial evidence vary with the plausibility of the plaintiffs' theory and the danger associated with such inferences." Id. The Supreme Court has held that in antitrust cases, "conduct consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." Matsushita, 475 U.S. at 588. Thus, in order for an antitrust plaintiff to succeed in opposing a motion for summary judgment on a Section 1 claim, the plaintiff "must present evidence that tends to exclude the possibility that the alleged conspirators acted independently." Id.

## III.

SOI brought this putative class action under § 1 of the Sherman Act, which provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. We have held that this provision requires a plaintiff to prove two elements: (1) that the defendants engaged in some form of "concerted action," and (2) that such action resulted in a restraint on trade or commerce. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 315 (3d Cir. 2010) (hereinafter "Brokerage").

10

The term "concerted action" encompasses the statutory terms "contract, combination[,] or conspiracy" and denotes "a unity of purpose or a common design and understanding or a meeting of minds or a conscious commitment to a common scheme." Id. at 314-15 (quotation marks and punctuation omitted). A plaintiff may attempt to demonstrate the existence of concerted action in two ways. First, a plaintiff may present direct evidence of concerted action. Id. at 323. Second, the plaintiff could show that the defendants engaged in parallel conduct (such as raising prices simultaneously) and that certain other "plus factors" exist which render this conduct a violation of the Sherman Act. Id.

Given the relatively lighter burden afforded to a plaintiff putting forth direct evidence of concerted action, the difference between direct and circumstantial evidence in an antitrust case assumes heightened significance. We have described direct evidence in this context as "evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted," Baby Food, 166 F.3d at 118, such as "a document or conversation explicitly manifesting the existence of the agreement in question." Brokerage, 618 F.3d at 324 n.23. On the other hand, we have held that vague statements such as an admonition to competitors to "play by the rules" do not constitute direct evidence of a conspiracy. See InterVest, Inc. v. Bloomberg, L.P., 340 F.3d 144, 156 n.5 (3d Cir. 2003) (holding that "cases require that direct evidence of an illegal agreement be established with much greater clarity" than the ambiguous statements made between bond traders in that case); see also Baby Food, 166 F.3d at 120-21 (rejecting the plaintiffs' contention that they had adduced direct evidence of a conspiracy when they

11

provided statements from employees that they had exchanged pricing information with their peers and superiors, documentary evidence that the defendants knew of their competitors' impending price increases, and an internal memorandum referring to a "truce" between the defendants).

SOI's assertion that Tuttle's testimony constitutes direct evidence of concerted action is unpersuasive. As the District Court explained, Tuttle's deposition testimony reflects that he does not recall the exact words that Graves used during the alleged illicit conversation, but that he simply got a general sense that there was something wrong about the conversation. This vague description of the conversation suggests that Tuttle was drawing his own inferences from the words used by Graves. The District Court properly concluded that it could not accept Tuttle's subjective impression as a conclusive fact. Tuttle's testimony thus is not direct evidence of a conspiracy.

Because this case involves only circumstantial evidence, we must decide whether the District Court correctly determined that SOI did not adduce sufficient evidence of parallel conduct – so-called "conscious parallelism" – and other "plus factors" to survive summary judgment. To make a successful claim under the Sherman Act based on conscious parallelism, "a plaintiff must show (1) that the defendants' behavior was parallel; (2) that the defendants were conscious of each other's conduct and that this awareness was an element in their decision-making process; and (3) certain 'plus' factors." In re Flat Glass Antitrust Litig., 385 F.3d 350, 360 n.11 (3d Cir. 2004) (hereinafter, "Flat Glass"). "Plus factors" are "circumstances under which . . . the inference of rational independent choice [is] less attractive than that of concerted action."

12

Lum v. Bank of Am., 361 F.3d 217, 230 (3d Cir. 2004).  We have identified three potential "plus factors":  "(1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) evidence implying a traditional conspiracy."  Brokerage, 618 F.3d at 322 (quotation marks omitted).  The first two factors are generally less important because they "may indicate simply that the defendants operate in an oligopolistic market, that is, may simply restate the (legally insufficient) fact that market behavior is interdependent and characterized by conscious parallelism."  Id.   Indeed, when parallel pricing is alleged, these first two factors "largely restate the phenomenon of interdependence,"  Flat Glass, 385 F.3d at 360, and thus we have held that "no conspiracy should be inferred from ambiguous evidence or from mere parallelism when defendants' conduct can be explained by independent business reasons."  Baby Food, 166 F.3d at 122; see also Brokerage, 618 F.3d at 326 (explaining that "a claim of conspiracy predicated on parallel conduct" is insufficient when "'common economic experience,' or the facts alleged in the complaint itself, show that independent self-interest is an 'obvious alternative explanation' for [the] defendants' common behavior" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 565, 567 (2007))).  The third factor, on the other hand, encompasses "non-economic evidence that there was an actual, manifest agreement not to compete, which may include proof that the defendants got together and exchanged assurances of common action or otherwise adopted a common plan even though no meetings, conversations, or exchanged documents are shown."  Flat Glass, 385 F.3d at 360 (quotation marks and citation omitted).  This factor is especially important in cases

13

like this one wherein the plaintiff's theory of conspiracy rests on "an agreement among oligopolists to fix prices at a supracompetitive level." Id. at 358.

Our inquiry does not end with the identification of "plus factors." As we explained in Baby Food,

> Once the plaintiffs have presented evidence of the defendants' consciously parallel pricing and supplemented this evidence with plus factors, a rebuttable presumption of conspiracy arises. The mere presence of one or more of these 'plus factors' does not necessarily mandate the conclusion that there was an illegal conspiracy between the parties, for the court may still conclude, based upon the evidence before it, that the defendants acted independently of one another, and not in violation of antitrust laws.

166 F.3d at 122. The Supreme Court has held that the overarching issue in considering an antitrust claim brought under § 1 of the Sherman Act is whether evidence of parallel conduct was "placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." Twombly, 550 U.S. at 557.[5] The relevant analysis thus required the District Court to consider all of the available facts to determine if there was a genuine dispute as to whether any alleged parallel pricing activity was the product of a specific agreement, or whether it was simply the result of the defendants' independent business judgment.

---

[5] Although Twombly was decided at the motion to dismiss stage, we recently explained that Twombly "aligns" the standard for ruling on a motion to dismiss and the standard for summary judgment in an antitrust case insofar as "[p]laintiffs relying on circumstantial evidence of an agreement must make a showing at both stages (with well-pled allegations and evidence of record, respectively) of something more than merely parallel behavior, something plausibly suggestive of (not merely consistent with) agreement." Brokerage, 618 F.3d at 322 (punctuation and citations omitted).

14

SOI contends that, even if it does not have direct evidence of a conspiracy, this case should have survived summary judgment because they alleged sufficient "plus factors"[6] to create an inference of impermissible concerted activity. As noted above, the first two "plus factors," motive and action contrary to self-interest, are not especially helpful in price-fixing cases where, as here, there are parallel price increases by competitors in a concentrated market. The three defendants all had a motive to conspire to fix prices, particularly if SOI is correct that demand was lessening for their services, given that joint action would allow them to maintain inflated prices while their customers had no other comparable options in light of the defendants' collective 90% market share. Similarly, although it is against each company's self-interest not to compete, concerted activity would be in their self-interest for the same profit-enhancing reason. The parallel price increases here could just as easily be the result of each company independently analyzing the market and realizing that they needed to charge more in order to make a profit, given that external circumstances indicated that they would be providing fewer services to their customers in the future. Alternatively, given the concentration of the helicopter-services market at issue here, such price increases could have just as easily been the result of "price leadership" as of price fixing. See Flat Glass, 385 F.3d at 359 This obvious business reasons for the defendants' actions casts serious doubt on whether wrongful concerted activity was the real cause of the price increases.

---

[6] The defendants do not contest that they exhibited parallel behavior by raising prices in a nearly simultaneous fashion.

This case thus hinges on whether SOI has produced any evidence suggesting "an actual, manifest agreement not to compete." Id. at 360 (quotation marks omitted). There are two pieces of evidence that could arguably fit here. First, Tuttle's testimony regarding Graves' conversation with a competitor would be evidence of an agreement, although the District Court found Tuttle's deposition testimony so vague that it was essentially worthless. The second piece of evidence suggesting an agreement is the unnamed helicopter operator's remark that despite the fact that universal agreement to the increased rates "would be illegal . . . price-fixing," "everyone more or less agreed to the necessity of a more or less equal rate hike for everyone." In its earlier opinion dismissing the first complaint, the District Court stated that "the relevance of the operator's statement as circumstantial evidence of an agreement is dubious" because

> his statement is ambiguous as to whether he comments on the industry's lawful but interdependent pricing decisions; casual observations about the general convergence of prices among un-named market participants at that time; or perhaps an illegal agreement by un-named actors at some unspecified point in time.

Superior Offshore Int'l, 738 F. Supp. 2d at 513.

We agree with the District Court's thoughtful analysis. These two pieces of evidence are both so vague that they cannot suggest a circumstance in which an "inference of rational independent choice [is] less attractive than that of concerted

16

action." Lum, 361 F.3d at 230.  Quite simply, there is insufficient evidence to create a triable issue of fact regarding whether the defendants conspired to fix prices.[7]

IV.

In an attempt to survive summary judgment despite its failure to produce sufficient evidence of concerted activity, SOI argues that it was entitled to the additional discovery it requested pursuant to Federal Rule of Civil Procedure 56(d).  We review a district court's denial of a motion for additional discovery under Rule 56(d) for abuse of discretion.  Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007); Renchenski v. Williams, 622 F.3d 315, 339 (3d Cir. 2010).

We typically afford trial courts broad discretion to regulate discovery.  See Pub. Loan Co., Inc. v. Fed. Deposit Ins. Corp., 803 F.2d 82, 86 (3d Cir. 1986).  For this reason, in order to overturn a district court's ruling to limit discovery, we must generally "conclude that there has been an interference with a 'substantial right,' . . . or that the discovery ruling is 'seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case.'"  Id. (quoting Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983)).

A District Court is "obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery."  Dowling v. City of Philadelphia, 855 F.2d 136, 139 (3d Cir.1988) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  Rule

---

[7] Because we hold that SOI did not present sufficient evidence of concerted action, we need not address whether the defendants' conduct "imposed an unreasonable restraint on trade."  Brokerage, 618 F.3d at 315 (quotations and citations omitted).

56(d) (formerly Rule 56(f)) sets forth the procedure when a party alleges that it does not possess facts necessary to oppose the motion for summary judgment:

> (d) <u>When Facts Are Unavailable to the Nonmovant</u>. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) defer considering the motion or deny it;
> > (2) allow time to obtain affidavits or declarations or to take discovery; or
> > (3) issue any other appropriate order.

A Rule 56(d) motion is "the proper recourse of a party faced with a motion for summary judgment who believes that additional discovery is necessary before he can adequately respond to that motion." <u>Murphy v. Millennium Radio Grp. LLC</u>, 650 F.3d 295, 309 (3d Cir. 2011).

A properly filed motion must be accompanied by "a supporting affidavit detailing 'what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" <u>Abington</u>, 480 F.3d at 257 n.3 (3d Cir. 2007) (quoting <u>Dowling</u>, 855 F.2d at 140). "However, because '[a] district court has discretion in acting on Rule 56[d] motions,' this list of factors is not exhaustive. Instead, it 'simply offer[s] a guide for the district court to follow in exercising its discretion under Rule 56[d].'" <u>Horvath v. Keystone Health Plan E., Inc.</u>, 333 F.3d 450, 458 (3d Cir. 2003) (quotation marks and citations omitted).

Here, SOI's counsel filed an affidavit with his Rule 56(d) motion identifying nine types of discovery that SOI needed to respond adequately to the defendants' summary judgment motion. This discovery, the affidavit asserted, "will lead to more information

18

about communications among the Defendants that can be used to prove that Defendants conspired to raise prices for offshore helicopter services in the Gulf of Mexico starting in 2001." App. 335. In denying this request, the District Court stated that SOI had improperly cast a wide "discovery net" because "the foundation for the requests in purely speculative. No facts have been presented that suggest further discovery would remedy Tuttle's conjecture and speculation." Id. at 22.

We do not believe the District Court abused its discretion in denying SOI's Rule 56(d) motion. At the outset, it is worth noting that the District Court was well within the bounds of its considerable discretion when it elected to limit discovery to the allegations added to the amended complaint. Having already – correctly – determined that the initial complaint was subject to dismissal absent the new allegations, the District Court afforded SOI an opportunity to demonstrate the truth of the allegations made in the amended complaint. SOI failed to do so. As noted above, Tuttle's vague deposition testimony makes clear that the information included in the amended complaint did not accurately reflect what Tuttle observed. Tuttle could not recall crucial details, including the identity of the person who supposedly conspired with Graves to fix prices. SOI then attempted to ameliorate this deficiency by requesting a plethora of discovery, both in a letter request and again in its Rule 56(d) motion. As the District Court noted, the majority of the discovery sought by SOI "pertain[s] to proof of the alleged parallel pricing conduct [and] industry practices" and would thus be of little relevance to demonstrating the existence of any "plus factors." Id. at 20. It was thus proper to conclude that SOI's affidavit failed to demonstrate how additional discovery would preclude summary judgment.

19

Moreover, SOI failed to exercise diligence in the discovery process since the inception of this litigation. As the District Court correctly noted, SOI could have sought discovery during the 15-month period after SOI's initial complaint was filed and before the District Court ruled on the defendants' motion to dismiss. Counsel for SOI gave no reason for his failure to seek discovery. Thus, for no discernable reason, SOI squandered its opportunity to take discovery during the significant period of time between the filing of the first motion to dismiss and the District Court's ruling on that motion. Accordingly, we conclude that the District Court did not abuse its discretion in denying SOI's Rule 56(d) motion.

## V.

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of the defendants.

20