**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4226
_____

NORMAN SHELTON,
                              Appellant

v.

BRYAN A. BLEDSOE, Warden of USP Lewisburg;
THOMAS A. KANE,
ACTING DIRECTOR OF BUREAU OF PRISONS;
JOSEPH NORWOOD, REGIONAL DIRECTOR OF THE
NORTHEAST BUREAU OF PRISONS;
CHUCK MAIORANA, Associate Warden at USP Lewisburg;
KRISTA BAHRE, Associate Warden at USP Lewisburg;
JAMES DUNKELBERGER,
Case Manager Coordinator at USP Lewisburg;
JOHN ADAMI, Unit Manager at USP Lewisburg; J
FOSNOT, Acting Captain of Security at USP Lewisburg;
F. PERRIN, Corrections Officer at USP Lewisburg with
ranks of Lieutenant and Special Investigation Supervisor;
S. HEATH, Corrections Officer at USP Lewisburg with ranks
of Lieutenant and Special Investigation Supervisor;
NELSON DREES, Corrections Officer at USP Lewisburg
with ranks of Lieutenant
and Special Investigation Supervisor;
WHITAKER, Corrections Officer at USP Lewisburg;
RUPERT, Correction Officer,
Corrections Officer at USP Lewisburg;
ZERDES, Corrections Officer at USP Lewisburg; ROOP,
Corrections Officer at USP Lewisburg;
WELLS, Corrections Officer at USP Lewisburg; POTTER,
Corrections Officer at USP Lewisburg;
KULAGO, Corrections Officer at USP Lewisburg; FISHER,
Corrections Officer at USP Lewisburg;
MOFFIT, Corrections Officer at USP Lewisburg; COMBE,
Corrections Officer at USP Lewisburg;

THE UNITED STATES OF AMERICA, through its
department, THE FEDERAL BUREAU OF PRISONS
JOHN DOE CORRECTION OFFICERS
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 3:11-cv-01618)
District Judge:  Honorable William J. Nealon
_____

Argued
September 11, 2013
_____

Before: McKEE, *Chief Judge*, SMITH and SLOVITER,
*Circuit Judges*

(Opinion Filed: January 7, 2015)
_____

Stephen D. Brown, Esq.
Christine C. Levin, Esq. (**ARGUED**)
Jennifer L. Burdick, Esq.
Francis J. Demody, Esq.
Sean P. McConnell
Dechert LLP
Cira Centre
2929 Arch St.
Philadelphia, PA 19104

    *Attorneys for Plaintiff-Appellant*

Michael J. Butler, Esq. (**ARGUED**)
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

    *Attorney for Defendants-Appellees*

OPINION OF THE COURT

McKEE, *Chief Judge*.

Norman Shelton appeals the district court's denial of class certification and grant of summary judgment in favor of defendants on Shelton's claims for alleged violations of the Eighth Amendment and the Federal Tort Claims Act ("FTCA"). For the reasons that follow, we will vacate the order denying class certification and granting summary judgment to defendants on Shelton's Eighth Amendment claim. We will affirm the district court's dismissal of Shelton's FTCA claim.

## I. FACTS AND PROCEDURAL HISTORY

The Special Management Unit, or "SMU," is a housing unit within the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg"). The SMU houses inmates who have been identified as having violent tendencies or who have a history of gang involvement during their incarceration. Inmates assigned to the SMU are confined to their cells for 23 hours a day, but they can spend the remaining hour in a recreation cage if they choose. SMU officials (including several of the defendants) are responsible for assigning cellmates in a manner that ensures the safety and security of the prison. When first assigned to the SMU, inmates are interviewed by prison officials. Information obtained during the interview is used to ensure that inmates who may be hostile to each other are not housed in the same cell.

Shelton, an inmate at USP-Lewisburg, brought this action on behalf of himself and other inmates housed in the SMU. He alleges that the defendants have engaged in a pattern, practice, or policy of improperly placing inmates who are known to be hostile to each other in the same cell. He

3

also claims that the defendants fail to intervene when the predictable inmate-on-inmate violence erupts, and that defendants improperly restrain inmates who refuse cell assignments with inmates who are known to be hostile to them. The complaint seeks damages for Shelton personally, but it seeks only injunctive and declaratory relief on behalf of the class. Appendix ("A A.") 88-89.

Shelton's individual claims under the Eighth Amendment and the FTCA were initially based on two separate incidents in 2009, one of which occurred in August, and the other in November. However, Shelton voluntarily dismissed claims arising from the August incident. We are therefore only concerned with the November incident, which occurred when Shelton was scheduled to be moved to another cell and housed with an inmate named Carr. According to Shelton, Carr had previously told a prison official, defendant Raup, that he would attack Shelton if they were housed in the same cell.

Raup purportedly threatened Shelton with punitive restraints when Shelton asked not to be housed with Carr. Shelton alleges that he was nevertheless physically forced into the cell by defendants Raup, Zelder, and two John Doe corrections officers. The next day, while Shelton was bending over to retrieve a food tray, Carr purportedly assaulted him. Shelton alleges that defendants Fisher, Raup, Kulago, Zelder, Moffit and Combe were outside his cell during the attack but did not attempt to intervene. The defendants claim that they responded in accordance with applicable policies that are designed to protect both inmates and guards.

Shelton's Eighth Amendment claims on behalf of the class are based on allegations that prison officials improperly placed inmates in cells with inmates known to be hostile to them. He alleges that the committee that makes the cell assignments places hostile inmates in the same cell despite committee's knowledge of prior violence between the inmates and its knowledge of the obvious risk the cell assignments create. According to Shelton, the injurious effects of this practice are exacerbated by a prison policy which prevents

4

guards from promptly intervening when inmate-on-inmate violence erupts. This policy purportedly requires corrections officers to stand outside a cell and use only verbal warnings until a lieutenant arrives when inmate violence erupts inside a cell.

Shelton defined the class for which he sought injunctive and declaratory relief as:

> [a]ll persons who are currently or will be imprisoned in the SMU program at USP Lewisburg. The class period commences from the time of this filing, and continues so long as USP Lewisburg Officials and Corrections Officers persist in the unconstitutional patterns, practices, or policies of (1) placing hostile inmates together in cells or recreation cages, and enforcing this placement through the use of punitive restraints, and (2) failing to take any reasonable measures to protect the inmates from inmate-on-inmate violence by hostile inmates.

A A. 77 (Compl. ¶ 119).

Shelton filed his motion for class certification 90 days after he filed the complaint, as required by Local Rule 23.3. Defendants responded by opposing class certification and asking the district court to dismiss the claims or grant summary judgment in their favor. No discovery requests were filed by either party; no disclosures were provided; and no discovery occurred. However, Shelton filed a brief opposing summary judgment, and he attached a Rule 56(d) declaration to that brief. *See* Fed. R. Civ. P. 56(d). The declaration stated that counsel needed discovery in order to properly respond to the defendants' motions.

As we noted at the outset, the district court denied Shelton's motion for class certification and granted defendants' motion for summary judgment. The court did so without first addressing Shelton's Rule 56(d) declaration. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28

5

U.S.C. § 1331, and we have jurisdiction to review final decisions of a district court pursuant to 28 U.S.C. § 1291. We review rulings on class certification for abuse of discretion. A court abuses its discretion "if [its] decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013) (citation and internal quotation marks omitted). Our review of the district court's legal rulings is *de novo*. *Id*.

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a grant of summary judgment, we assess the record using the same standard that district courts apply. *Interstate Outdoor Adver., L.P. v. Zoning Bd. of Twp. of Mount Laurel*, 706 F.3d 527, 530 (3d Cir. 2013). We must review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.*

We review the district court's response to a Rule 56(d) declaration for abuse of discretion. *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 310 (3d Cir. 2011).

### III. CLASS CERTIFICATION

Class actions are an exception to the general rule that litigation must be conducted by individual named parties. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Rule 23 of the Federal Rules of Civil Procedure contains the procedural requirements for class action litigation. A party seeking to bring a class action "must affirmatively demonstrate his[or her] compliance" with Rule 23. *Id*. An inquiry under Rule 23 begins with a determination of whether the plaintiff has satisfied the prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of the class representative. Depending on the type of class the movant seeks to certify, s/he must also demonstrate that the class meets certain requirements of Rule 23(b).

Shelton asked the court to certify a class under Rule

6

23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The district court did not analyze the specific requirements of Rule 23(a) or Rule 23(b)(2). Instead, it denied Shelton's motion for class certification because it found that the proposed class was not "objectively, reasonably ascertainable." *Shelton v. Bledsoe*, No. 3:CV-11-1618, 2012 WL 5250401, at *4 (M.D. Pa. Oct. 24, 2012).

Because we have not yet addressed the issue, this appeal requires us to decide whether ascertainability is a requirement for certification of a Rule 23(b)(2) class that seeks only injunctive and declaratory relief. We must also address the question of whether the district court properly defined the class in analyzing whether class certification was appropriate.

## A. Ascertainability

The word "ascertainable" does not appear in the text of Rule 23. However, "[a]lthough not specifically mentioned in the rule, an essential prerequisite of an action under Rule 23 is that there must be a 'class.'" 7A C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. Civ. § 1760 (3d ed. 2005). Courts have generally articulated this "essential prerequisite" as the implied requirement of "ascertainability"—that the members of a class are identifiable at the moment of certification. Because the question is intensely fact-specific and the origins of the requirement murky, a precise definition of the judicially-created requirement of ascertainability is elusive. *See Alliance to End Repression v. Rochford*, 565 F.2d 975, 980 n.6 (7th Cir. 1977) (noting that "[i]t is not clear whether the source of th[e] implied requirement [of ascertainability] is . . . Rule 23(a)(2) or more simply something inherent in the very notion of a 'class'"). We recently held, in the context of a Rule 23(b)(3) class action, that certification is only appropriate if the members of the class are "currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d

7

583, 593 (3d Cir. 2012).

In *Marcus*, we analyzed the question of ascertainability separately from the question of whether the class was properly defined under Rule 23(c)(1)(B). *See* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class and the class claims, issues, or defenses . . . .").[1] We have interpreted Rule 23(c)(1)(B) to require a certification order that includes "a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified." *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187 (3d Cir. 2006). *Marcus* stands for the proposition that ascertainability requires something more than a class capable of clear definition by a court; it requires that the class's members be identifiable. 687 F.3d at 593 ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."). However, *Marcus* involved a Rule 23(b)(3) class, and it is not clear that the reasons for requiring ascertainability are applicable here, where Shelton attempted to certify a class under Rule 23(b)(2) seeking only injunctive and declaratory relief.

Though classes certified under Rule 23(b)(3) and Rule 23(b)(2) all proceed as "class actions," the two subsections actually create two remarkably different litigation devices. Rule 23(b)(3) requires that "the court finds that the questions of law or fact common to class members predominate over

[1] We did not analyze ascertainability as an implied requirement of Rule 23(a), as some other courts have done. *See Floyd v. City of New York*, 283 F.R.D. 153, 161 (S.D.N.Y. 2012) ("Some courts have added an 'implied requirement of ascertainability' to the express requirements of Rule 23(a) . . . ." (citing *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006))). Instead, in *Marcus* we treated ascertainability as an implied requirement, the analysis of which preceded the Rule 23(a) analysis. *Marcus*, 687 F.3d at 593. This divergence illustrates another ambiguity of the ascertainability standard: the section of Rule 23 from which it is implied.

any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As compared to Rule 23(b)(2), Rule 23(b)(3) "allows class certification in a much wider set of circumstances" including those "in which class-action treatment is not as clearly called for." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (citation and internal quotation marks omitted). Because a Rule 23(b)(3) class is such an "adventuresome innovation," *id.*, Congress included additional "procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members." *Comcast*, 133 S. Ct. at 1432. In addition to requiring predominance and superiority for such a class, Rule 23 requires that potential class members be given the opportunity to opt-out, and that they receive "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

In contrast, "[t]he key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful *only* as to all of the class members or as to none of them.'" *Wal-Mart*, 131 S. Ct. at 2557 (emphasis added) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Because there is no right to opt out from such a class, and because significant individual issues in a (b)(2) class might present manageability issues and undermine the value of utilizing the class action mechanism, we have instructed that such classes must be cohesive. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998). However, this requirement comes from Rule 23(b)(2) itself, not from any general requirement of ascertainability. Because the focus in a (b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a (b)(2) action than in a (b)(3) action. *See Wal-Mart*, 131 S. Ct. at 2558 ("When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to

9

undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute."); *Barnes*, 161 F.3d at 143 n.18 ("Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries." (citation omitted)).

Indeed, an Advisory Committee note to Rule 23 notes that "illustrative" examples of a Rule 23(b)(2) class "are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, *usually one whose members are incapable of specific enumeration*." Fed. R. Civ. P. 23 advisory committee's note (1966) (emphasis added). In light of this guidance, a judicially-created implied requirement of ascertainability— that the members of the class be *capable* of specific enumeration— is inappropriate for (b)(2) classes. Moreover, the enforcement of the remedy usually does not require individual identification of class members in (b)(2) class actions: "If relief is granted . . . the defendants are legally obligated to comply, and it is usually unnecessary to define with precision the persons entitled to enforce compliance, since presumably at least the representative plaintiffs would be available to seek . . . relief if necessary." *Rice v. City of Phila.*, 66 F.R.D. 17, 19 (E.D. Pa. 1974).

Thus, it does not follow from our holding in *Marcus* that ascertainability is always a prerequisite to class certification. In the context of a (b)(3) class, the requirement that the class be defined in a manner that allows ready identification of class members serves several important objectives that either do not exist or are not compelling in (b)(2) classes.[2] *See Carrera v. Bayer Corp.*, 727 F.3d 300,

---

[2]     First, it eliminates serious administrative burdens that are incongruous with the efficiencies expected in a class action by insisting on the easy identification of class members. . . . Second, it protects absent class members by facilitating the best notice practicable . . . in a Rule 23(b)(3) action. . . . Third, it protects defendants by ensuring that those persons who will be bound by the final

10

307 (3d Cir. 2013) (noting that ascertainability plays "key roles . . . as part of a Rule 23(b)(3) class action lawsuit"). The ascertainability requirement ensures that the procedural safeguards necessary for litigation as a (b)(3) class are met, but it need not (and should not) perform the same function in (b)(2) litigation. *See Battle v. Pennsylvania*, 629 F.2d 269, 271 n.1 (3d Cir. 1980) ("Where . . . the class action seeks only injunctive or declaratory relief, for which the notice provision of [Rule] 23(c)(2) is not mandatory, the district court has even greater freedom in both the timing and specificity of its class definition.").

Although this issue is a matter of first impression for us, some of our sister courts of appeals have addressed this issue and agree that it is improper to require ascertainability for a (b)(2) class. The Courts of Appeals for the First and Tenth Circuits explicitly rejected an ascertainability requirement for Rule 23(b)(2) classes. The court's analysis in *Shook v. El Paso County* is particularly germane to our inquiry. 386 F.3d 963, 972 (10th Cir. 2004). There, the court explained that "many courts have found Rule 23(b)(2) well suited for cases where the composition of the class is not readily ascertainable; for instance, in a case where the plaintiffs attempt to bring suit on behalf of a shifting prison population." *Id.* at 972. Similarly, the First Circuit explained that a (b)(2) class definition need not be as precise as that of a (b)(3) class. *See Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (holding that, because "notice to the members of a (b) (2) class is not required . . . the actual membership of the class need not . . . be precisely delimited"). Both courts reasoned that the district courts erred in those cases by requiring ascertainability (or "identifiability"), which the courts noted was only applicable to Rule 23(b)(3) classes. *See Shook*, 386 F.3d at 972 (noting that the district court impermissibly "imported additional elements from Rule 23(b)(3) into the (b)(2) analysis [including] identifiability"); *Yaffe*, 454 F.2d at 1366 ("[T]he [district] court applied

---

judgment are clearly identifiable.

*Marcus*, 687 F.3d at 593 (internal citations and quotation marks omitted); *see also Hayes*, 725 F.3d at 354-55.

11

standards applicable to a subdivision (b) (3) class rather than to a subdivision (b) (2) class.").

The Court of Appeals for the Fifth Circuit has also tied the ascertainability (or "precise class definition") requirement to the procedural protections of Rule 23(b)(3), noting that "[s]ome courts have stated that a precise class definition is not as critical where certification of a class for injunctive or declaratory relief is sought under [R]ule 23(b)(2)." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004). However, the court clarified that, "[w]here notice and opt-out rights are requested [in a (b)(2) class action] . . . a precise class definition becomes just as important as in the [R]ule 23(b)(3) context." *Id.* There, plaintiffs sought a mix of injunctive relief and backpay. *Id.* Here, only injunctive and declaratory relief are sought.[3]

Other courts have certified very broadly-defined (b)(2) classes without explicitly discussing ascertainability. For example, the Court of Appeals for the Second Circuit upheld the certification of a Rule 23(b)(2) class that was probably unascertainable. The class there included children currently in the custody of a city agency, those who would be in custody in the future, and even some children who *should be*

---

[3] The Court of Appeals for the Seventh Circuit has also discussed this issue, though its guidance is less clear. It initially implied a "definiteness" requirement from Rule 23, but it held that "a class that satisfies all of the other requirements of Rule 23 will not be rejected as indefinite when its contours are defined by the defendants' own conduct." *Rochford*, 565 F.2d at 978. Subsequently, it clarified that *Rochford*'s "tolerance of a wildly indefinite class definition" is disfavored, *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 496 (7th Cir. 2012), and it suggested an indefinite class may only be certified if its "members could be enumerated eventually." *Rahman v. Chertoff*, 530 F.3d 622, 626 (7th Cir. 2008). However, the classes in each of these more recent cases failed to meet the requirements of Rule 23(a), and certification was inappropriate on that basis. *See Jamie S.*, 668 F.3d at 496-97; *Rahman*, 530 F.3d at 627.

*known* to the city agency. *See Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997).[4]  In a recent case, a district court for the Southern District of New York explained that "[i]t would be illogical to require precise ascertainability in a suit that seeks no class damages. The general demarcations of the proposed class are clear . . . and that definition makes the class sufficiently ascertainable for the purpose of Rule 23(b)(2)." *Floyd v. City of New York*, 283 F.R.D. 153, 172 (S.D.N.Y. 2012).  That court also noted that a number of other federal courts have certified unascertainable classes under Rule 23(b)(2).  *See id.* at 171-72 nn. 115-17 (collecting cases).[5]  Finally, we think it significant that the Supreme Court's analysis of whether a class had been properly certified under Rule 23(b)(2) in *Wal-Mart Stores, Inc. v. Dukes* lacks any inquiry into "ascertainability."  131 S. Ct. at 2557.

The nature of Rule 23(b)(2) actions, the Advisory Committee's note on (b)(2) actions, and the practice of many of other federal courts all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief, such as the putative class here.  This does not suggest that we are jettisoning the basic requirement that "there must be a 'class'" in a class action.  *See* C. Wright, A. Miller, & M. Kane, *supra* § 1760.  Rather, we are merely holding that, for certification of a 23(b)(2) class seeking only declaratory or injunctive relief, a properly defined "class" is one that: (1) meets the requirements of Rule 23(a); (2) is sufficiently

---

[4] That class was defined as "[a]ll children who are or will be in the custody of the New York City Administration for Children's Services ("ACS"), and those children who, while not in the custody of ACS, are or will be at risk of neglect or abuse and whose status is or should be known to ACS." *Marisol A.*, 126 F.3d at 375.

[5] The district court in *Floyd* describes our decision in *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) as certifying a Rule 23(b)(2) class that was "clearly unascertainable." *Floyd*, 283 F.R.D. at 172 n.117.  It is important to note that we did not specifically address ascertainability in that case.

cohesive under Rule 23(b)(2) and our guidance in *Barnes*, 161 F.3d at 143; and (3) is capable of the type of description by a "readily discernible, clear, and precise statement of the parameters defining the class," as required by Rule 23(c)(1)(B) and our discussion in *Wachtel*, 453 F.3d at 187. No additional requirements need be satisfied.

## B. Class Definition

Shelton's proposed class, when properly defined, is easily capable of the type of description demanded by Rule 23(c)(1)(B). As noted above, he seeks certification of a class consisting of

> [a]ll persons who are currently or will be imprisoned in the SMU program at USP Lewisburg. The class period commences from the time of this filing, and continues so long as USP Lewisburg Officials and Corrections Officers persist in the unconstitutional patterns, practices, or policies of (1) placing hostile inmates together in cells or recreation cages, and enforcing this placement through the use of punitive restraints, and (2) failing to take any reasonable measures to protect the inmates from inmate-on-inmate violence by hostile inmates.

A A. 77. The district court noted that Shelton proposed a class of "all persons who are currently or will be imprisoned in the [SMU] . . . ." *Shelton*, 2012 WL 5250401, at *1. For reasons that are not at all apparent, the district court improperly narrowed the class to inmates "placed with an inmate that prison officials knew, or should have known, posed a threat to that inmate[;]" inmates "housed with a hostile inmate [and] assaulted by the hostile inmate, and prison officials fail[ed] to intervene[;]" and "inmates who, pursuant to a prison practice, are placed in painful punitive restraints for refusing a dangerous cell assignment." *Id.* at 5-6. The court thereby imposed extra requirements requiring the very individualized, case-by-case determinations that the court then paradoxically ruled were fatal to class certification. Though we have clarified that the type of ascertainability analysis performed by the district court is

14

inappropriate here, it is also important to note that the district court erred by narrowing the definition of the proposed class.

It is difficult to understand why the district court redefined the proposed class in this manner. Courts have discretionary authority to "reshape the boundaries and composition of the class," but when they do so, "that action entails a determination that reformulating the class will better serve the purposes of Rule 23 and the underlying policies of the substantive law than would denying certification altogether." Tobias Barrington Wolff, *Discretion in Class Certification*, 162 U. Pa. L. Rev. 1897, 1925 (2014). Here however, the court appears to have simply misinterpreted or misunderstood the class Shelton was proposing. That resulted in a class definition that undermined, rather than served, the purposes of Rule 23 "and the underlying polices of the substantive law." *See id.* Given the declaratory and injunctive relief that Shelton seeks, the narrowing of the requested class was neither necessary nor appropriate.

Common sense supports the assumption that the Bureau of Prisons ("BOP") knows where inmates in a given institution are housed, and the defendants have offered nothing that would undermine that assumption or support a finding that the BOP would have trouble determining which inmates have been assigned to the SMU at USP-Lewisberg since the complaint was filed. Accordingly, if Shelton has satisfied the other requirements of Rule 23, the district court should have no trouble describing the class as required by Rule 23(c)(1)(B) and, eventually, Rule 23(c)(3)(A). Indeed, in the unlikely event that it becomes necessary to actually identify class members at some point during the litigation, the district court should be able to determine individual members based on the BOP's own records.

The district court also erred in concluding that the class was overly broad because some putative class members have not yet suffered an injury. *See Shelton*, 2012 WL 5250401, at *5. There is no requirement that every class member suffer an injury before a class is certifiable under Rule 23. In fact, we have held to the contrary. In *Hassine v. Jeffes*, we stated:

Rule 23 does not require that the representative

16

plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be *common* to the class, and that the named plaintiff demonstrate a personal interest or *threat of injury* that is real and immediate, not conjectural or hypothetical.

846 F.2d 169, 177 (3d Cir. 1988) (internal quotation marks and alterations omitted) (second emphasis added).

This is particularly true in the context of a claim under the Eighth Amendment, which protects against the risk—not merely the manifestation—of harm. As the Supreme Court has explained, "an inmate seeking an injunction to prevent a violation of the Eighth Amendment must show that prison officials are 'knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so . . . into the future.'" *Brown v. Plata*, 131 S. Ct. 1910, 1960 (2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 846 (1994)). In *Plata*, prisoners with physical or mental illness challenged a state prison system's medical care system. In deciding the propriety of the remedy that had been granted to the prisoners, who comprised two separate Rule 23 classes, the Court explained that "[p]risoners who are not sick or mentally ill do not yet have a claim that they have been subjected to care that violates the Eighth Amendment, but in no sense are they remote bystanders in [the state's] medical care system. They are that system's next potential victims." *Id.* at 1940. There, as here, the focus was more on the defendants' conduct and policies than on the individual identities or medical issues of each class member. *See id.* (noting that "all prisoners in California are at risk so long as the State continues to provide inadequate care").

We have instructed district courts to consider this aspect of Eighth Amendment claims when deciding whether the requirements of Rule 23 have been met at the class certification stage. *See Hagan v. Rogers*, 570 F.3d 146, 157-58 (3d Cir. 2009) (holding that a class of "inmates . . . [who] were either subject to actual skin infections, or were subject to the threat of future injury due to deliberate indifference on

17

the part of prison officials in failing to contain the contagion" should not fail for lack of typicality under Rule 23(a) because all class members were at least "subject to the threat of an injury").

Thus, Shelton's proposed class is not overbroad or improperly defined for purposes of Rule 23. On remand, the district court must consider whether the properly-defined putative class meets the remaining Rule 23 requirements for class certification.

## IV. SUMMARY JUDGMENT

Shelton also appeals the district court's entry of summary judgment in favor of defendants on his individual claims under the Federal Tort Claims Act and the Eighth Amendment.[6] We will first discuss the court's failure to consider the declaration Shelton's attorney filed under Fed R. Civ. P. 56(d) in opposition to summary judgment.

## A. Rule 56(d)

As we noted earlier, Shelton's opposition to the defendants' motion for summary judgment included a declaration that his counsel submitted pursuant to Rule 56(d). According to that declaration, Shelton needed discovery in order to properly respond to the defendants' summary judgment motion.

"[I]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'" *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988)). Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that,

---

[6] The district court's order granting summary judgment to the defendants disposed of Shelton's remaining claims and followed its order denying class certification. *See Shelton v. Bledsoe*, No. 3:CV-11-1618, 2012 WL 5267034, at *8-9 (M.D. Pa. Oct. 24, 2012).

for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Defendants rely on the non-precedential decision in *Superior Offshore International, Inc. v. Bristow Group, Inc.*, 490 F. App'x 492, 501 (3d Cir. 2012), to argue that Shelton was required to file a "motion" in order to seek relief under Rule 56(d). The panel in *Superior Offshore* did state that "[a] Rule 56(d) motion is the proper recourse of a party faced with a motion for summary judgment who believes that additional discovery is necessary before he can adequately respond to that motion." *Id.* (citation and internal quotation marks omitted). We have previously referred to items filed under Rule 56(d) as "motions." *See Murphy*, 650 F.3d at 309-10. More pointedly, the panel in *Doe v. Abington Friends School* explained that, in responding to a motion for summary judgment, "if the non-moving party believes that additional discovery is necessary, the proper course is to file a motion . . . ." 480 F.3d at 257.

However, we do not interpret these statements or our opinions in *Murphy* or *Doe* as actually requiring that an opposition under Rule 56(d) be registered in a *motion* to the court. The unambiguous text of the Rule does not require an opposition on Rule 56(d) grounds to be formally styled as a motion. Indeed, the text of the rule, Advisory Committee's notes, our own precedent, and guidance from other circuit courts all indicate that a formal motion is not required by the Rule.

Rule 56 sets forth the procedure for requesting and opposing summary judgment. It requires only that a party's *request for* summary judgment be styled as a motion. Rule 56(a) provides:

> A party may *move* for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the *movant* shows

19

that there is no genuine dispute as to any material fact and the *movant* is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the *motion*.

*Id*. (emphasis added). The Rule specifically requires a "motion" to be filed, and it refers to the party requesting summary judgment as "the movant." However, no such language is used to refer to the party opposing summary judgment. Rule 56(c) sets out the procedures that must be followed to oppose a motion for summary judgment. It refers to the party opposing a summary judgment not as a "movant," but merely as the "party asserting that a fact . . . is genuinely disputed." Fed. R. Civ. P. 56(c)(1). In describing the procedures that must be followed to obtain or oppose summary judgment, Rule 56(c) repeatedly refers to the initial request for summary judgment as a *motion*, but it requires only affidavits or declarations from the opposing party.[7]

The current dispute concerns the interpretation and application of Rule 56(d), which by its own terms applies only "When Facts are Unavailable to the Nonmovant." Fed. R. Civ. P. 56(d). The procedure by which the party opposing

---

[7] Rather than requiring a motion to allege a factual dispute, Rule 56(c)(1) requires that the opposing party "must support the assertion [that a dispute of fact exists] by: (A) citing to particular parts of materials in the record, including depositions, [etc.]" Subdivision (2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be [admitted into evidence.]" Fed. R. Civ. P. 56(c)(2). We do not interpret the reference to "a party" to require that the opponent to a summary judgment motion file an opposing motion. Rather, it is clear from the context that the drafters used the term there for sake of simplicity and clarity. Rule 56(c)(3) only addresses what the reviewing court may consider and is not relevant to our inquiry. Rule 56(c)(4) is entitled "*Affidavits or Declarations.*" It provides that affidavits or declarations "used to support or *oppose a motion* must be made on personal knowledge, [and] set out facts that would be admissible in evidence." *Id.* (emphasis added.)

summary judgment submits an affidavit or declaration under Rule 56(d) supplants the procedure that would otherwise follow under Rule 56(c) if facts were available to the nonmovant. *See* 10B C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. § 2740 (3d ed. 2005) ("[W]hen the movant has met the initial burden required for the granting of a summary judgment, the opposing party must either establish a genuine issue for trial . . . or explain why he cannot yet do so . . . ."). As was true with regards to Rule 56(c), it makes little sense to conclude that the drafters would refer to the party presenting such an affidavit or declaration as a "nonmovant" if they intended to require the affidavit or declaration to be presented by motion. Moreover, the text of the Rule does not require that the party who opposes summary judgment by filing an affidavit or declaration must thereafter move for discovery. Rather, the Rule simply allows the court to respond to a Rule 56(d) affidavit or declaration by "allow[ing] time . . . to take discovery." Fed. R. Civ. P. 56(d). Thus, no formal discovery motion is contemplated, and we decline to infer any such requirement.

This was readily apparent in the phrasing of the Rule before the 2010 Amendments. *See St. Surin v. V.I. Daily News, Inc.*, 21 F.3d 1309, 1313-14 (3d Cir. 1994) (citing cases that emphasize the requirement of an "affidavit"). The Advisory Committee has explained that the Rules were amended "without substantial change." Fed. R. Civ. P. 56(d), advisory committee's note (2010). Prior to the amendments, Rule 56(f), which became Rule 56(d), was captioned "When Affidavits are Unavailable." The Rule stated: "Should it appear from the affidavits of a party opposing the motion that [s/]he cannot for reasons stated present by affidavit facts essential to justify his [or her] opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." *Costlow v. United States*, 552 F.2d 560, 563 n.2 (3d Cir. 1997). The old rule thus assumes that the party opposing summary judgment will file an affidavit, not a motion for discovery, in response to a summary judgment motion. Furthermore, the 2010 Amendments to the Federal Rules of Civil Procedure allow for alternatives to a formal

affidavit such as "a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury." Fed. R. Civ. P. 56, advisory committee's note (2010).

Our holding that a formal motion is not required to request discovery under Rule 56 is consistent with the analysis of other circuit courts of appeals. Although the request for discovery is sometimes—rather casually— characterized as a "motion," courts recognize that the nonmoving party can respond to a motion for summary judgment by filing an affidavit or declaration requesting discovery. For example, before the current amendments to Rule 56 were enacted, the Court of Appeals for the Tenth Circuit stated that it was considering the denial of a Rule 56(f) "motion," but the opposition was actually an affidavit attached to the party's response to the motion for summary judgment. *Trask v. Franco*, 446 F.3d 1036, 1041-42 (10th Cir. 2006). Other courts have followed similar practices.[8]

---

[8] It is clear that many courts' use of the word "motion" to refer to an opposition registered pursuant to Rule 56(d) is imprecise; affidavits and declarations are regularly demanded and accepted. *See Hicks v. Johnson*, 755 F.3d 738, 743 (1st Cir. 2014) (referring to a "rule 56(d) motion" but explaining that "[t]o benefit from the protections of Rule 56(d), a litigant must ordinarily furnish the nisi prius court with a timely statement—if not by affidavit, then in some other authoritative manner" (citation omitted)); *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894-95 (8th Cir. 2014) (considering a properly submitted affidavit under Rule 56(d), but referring to it as a "motion"); *In re World Trade Center Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 212 n.3 (2d Cir. 2014) ("[T]o the extent that plaintiffs needed additional time for discovery, they failed to file an affidavit pursuant to [Rule] 56(d)."); *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) ("[A] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement . . . to set out reasons for the need for discovery in an affidavit." (citation omitted)).

Thus, nothing precludes a party from requesting an opportunity for discovery under Rule 56(d) by simply attaching an appropriate affidavit or declaration to that party's response to a motion for summary judgment, and by asserting that summary judgment should not be granted without affording the responding nonmovant an opportunity for discovery. Moreover, we note that district courts usually grant properly filed requests for discovery under Rule 56(d) "as a matter of course," whether the nonmovant's response to a summary judgment motion is characterized as a motion, affidavit, or declaration. *Murphy*, 650 F.3d at 309-10 (quoting *Doe*, 480 F.3d at 257); *cf. Mid-South Grizzlies v. Nat'l Football League*, 720 F.2d 772, 779 (3d Cir. 1983). This is particularly true when there are discovery requests outstanding or where relevant facts are under control of the party moving for summary judgment. *Murphy,* 650 F.3d at 310.

If discovery is incomplete, a district court is rarely justified in granting summary judgment, unless the discovery request pertains to facts that are not material to the moving party's entitlement to judgment as a matter of law. *Doe*, 480 F.3d at 257. Summary judgment may also be granted if the Rule 56(d) declaration is inadequate. *See Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) (finding the affidavit insufficient because it did not specify what discovery was needed or why it had not previously been secured). An adequate affidavit or declaration specifies "what particular information that is sought; how, if disclosed, it would preclude summary judgment; and why it has not been previously obtained." *Dowling*, 855 F.2d at 140 (citing *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 229-30 (3d Cir. 1987)).

Here, the district court granted summary judgment to the defendants without even considering the declaration that Shelton's attorney filed in response to defendants' motion for summary judgment. This was an abuse of discretion. Accordingly, we will reverse the grant of summary judgment and remand so that the district court may consider counsel's

23

declaration regarding the need for discovery.[9]

## B. FTCA Exhaustion

Regardless of whether Shelton's Rule 56(d) declaration justifies discovery in advance of the court's ruling on defendants' motion for summary judgment, it is clear that, because he did not exhaust his administrative remedies, Shelton cannot establish a claim for negligence under the FTCA based on the purported incident in November 2009.

No claim can be brought under the FTCA unless the plaintiff first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim. 28 U.S.C. § 2675(a); *see also McNeil v. United States*, 508 U.S. 106, 112 (1993); *Deutsch v. United States*, 67 F.3d 1080, 1091 (3d Cir. 1995) ("[A] claimant must have first presented the claim, in writing and within two years after its accrual, to the appropriate federal agency, and the claim must have been denied."). This requirement is jurisdictional and cannot be waived. *Rosario v. Am. Export-Isbrandtsen Lines, Inc.*, 531 F.2d 1227, 1231 (3d Cir. 1976).

Here, defendants supported their motion to dismiss and/or for summary judgment on Shelton's FTCA claim with a declaration from Mike Romano, agency counsel for the BOP. Romano stated that, based upon his search of the administrative claims database of the BOP, Shelton had not filed an administrative tort claim regarding any incident on November 26, 2009. Romano did, however, confirm that Shelton had filed seven tort claims regarding other incidents in 2009 and 2011. Shelton's only response to this declaration

---

[9] To the extent the district court did not address the parties' arguments as to the defendants' motion to seal documents, the district court can consider whether the documents should be sealed on remand. The court's inquiry should take into consideration the amount of time that has passed since the documents were originally filed and whether the institutional concerns that may have initially justified sealing are still sufficient to prevent Shelton from examining those documents.

was his insistence that he needed discovery to prove that he had filed an administrative tort claim. Shelton further argues in a letter to this court that his complaint alleges that he exhausted his remedies as to the November 26, 2009 incident. He claims that allegation is sufficient because he needs discovery to "bolster" his claim that he has appropriately exhausted this claim. However, his argument ignores the fact that the government has already produced the relevant discovery. The government's evidence establishes that Shelton did not exhaust, and Shelton does not explain how any additional discovery could refute the finding that he failed to exhaust any claim arising from a November 26, 2009 incident.

The district court correctly found Shelton's reply inadequate and held that Romano's declaration was sufficient to establish that Shelton had not exhausted any claim arising from the alleged incident on November 26, 2009. Accordingly, the court granted the defendants' motion to dismiss the FTCA claim based on its conclusion that Shelton's failure to exhaust deprived the court of jurisdiction to hear that claim. We agree. Accordingly, we will affirm the district court's finding that it had no jurisdiction to hear Shelton's FTCA claim.

## V. CONCLUSION

For the foregoing reasons, we will vacate the order denying Shelton's motion for class certification and the order granting summary judgment to defendants on Shelton's Eighth Amendment claims. We will remand for the district court to consider both issues in a manner consistent with this opinion. We will affirm the district court's dismissal of Shelton's FTCA claim.