**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2374
_____

SUGET THOMPSON,
                                        Appellant
v.

THE ANTHEM COMPANIES, INC;
AMERIGROUP NEW YORK LLC,
a/k/a Healthplus HP, LLC;
CORPORATE JOHN DOES 1-10;
JOHN/JANE DOES 1-30;
AMERIGROUP NEW JERSEY, INC.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-18-cv-06676)
District Judge: Honorable Esther Salas
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 5, 2023
_____

Before: SHWARTZ, MATEY, and FISHER, *Circuit Judges*

(Filed:  February 12, 2024)
_____

OPINION*
_____

_____

    *This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge*.

Suget Thompson appeals the District Court's grant of summary judgment for her former employer, the Anthem Companies ("Anthem"), on her claims of discrimination and retaliation. The District Court correctly concluded that Anthem did not act improperly, and we will affirm the District Court's order.

**I.**

From May 2012 until January 2016, Thompson, who is of Guyanese descent, worked as a Senior Case Manager at Anthem. In February 2015, Thompson received a 2.80 out of a possible 5 on her 2014 performance evaluation, which rounded up to a 3, rating her at "Consistently Successful." Thompson refused to sign this evaluation because she did "not feel [her] evaluation was fair," App. 206, and she told her manager, Nadine Carter, that she thought the performance evaluation had "nothing to do with [her] day-to-day work," App. 132. Carter allegedly responded that Thompson should consider herself lucky to be making "mega bucks as a little Guyanese girl." App. 3, 16. Thompson then spoke with Human Resources ("HR") about "the high caseload and how they [sic] treating me, and the comments they making [sic] about the job." Supp. App. 7 ¶ 12 (first alteration in original). But Thompson did not report Carter's "little Guyanese girl" comment to HR.

In June 2015, Susan Washington took over as Thompson's manager.[1] By that time, Thompson had been failing to follow up with colleagues and keep her files updated.

---

[1] In August 2015, Carter took a job with a different unit at Anthem and transferred to an office in Georgia.

That prompted Washington and a representative from HR to meet with Thompson to discuss her performance, a meeting that ended with Thompson agreeing to take steps to meet expectations.

But things did not improve and, a few months later, Washington issued Thompson a written warning identifying specific concerns with Thompson's performance. The Written Warning set forth an action plan for Thompson to follow and contained the following statement: "If at any time during the warning period or thereafter you do not meet the expectations, you do not make sufficient progress toward meeting the stated expectations, or are not able to sustain the improvement, additional corrective action may be taken, up to and including termination of your employment." App. 210. Following the Written Warning, Thompson and Washington met weekly so Washington could measure Thompson's progress on the corrective action plan.

In November 2015, Thompson complained to HR about her allegedly hostile work environment, alleging that her supervisor and other individuals "made [her] feel very small" in meetings by "hinting on [her] accent" and asking her to repeat things. App. 161. Thompson said that "all the complaints [from my managers] had nothing to do with my job performance. It was like, oh, it was a customer call and said I was rude . . . ." App. 134. All the while, Thompson continued to struggle in the same areas that her managers flagged in the performance reviews, and Thompson's employment was terminated in January 2016.

Thompson filed a complaint against Anthem in New Jersey Superior Court, alleging Anthem violated the New Jersey Law Against Discrimination ("NJLAD").

Anthem removed the case, and the District Court dismissed the complaint without prejudice. Thompson filed an amended complaint alleging national origin discrimination, hostile work environment, and retaliation. The District Court dismissed the hostile work environment claim as barred by the statute of limitations but determined the national origin discrimination and retaliation claims survived Anthem's motion to dismiss. Defendants then moved for summary judgment, which the District Court granted, concluding that Thompson failed to establish a prima facie case of national origin discrimination and that her retaliation claim failed for lack of causation. Thompson now appeals.[2]

**II.**

A.

Employment discrimination claims under the NJLAD are analyzed using the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 788 (3d Cir. 2007) (applying the *McDonnell Douglas* framework to an age discrimination case because "New Jersey uses the *McDonnell Douglas*[] burden-shifting scheme for discrimination cases" brought under the NJLAD). The plaintiff must first make a prima facie case of employment discrimination, showing 1) membership in a protected class; 2)

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's decision de novo, and summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015).

qualification for the position; 3) an adverse employment action occurring 4) under circumstances giving rise to an inference that the adverse action occurred on account of the protected classification. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999). Thompson has not met her burden to show that she was fired because of her national origin.

Thompson points to two instances of derogatory remarks,[3] but that is not sufficient to show her termination, nearly one year later, was connected to either instance.[4] Indeed, ample intervening events defeat an inference of discrimination. Thompson had routinely failed to follow up with members, update her log report, and attend mandatory meetings, which prompted Washington to step in. And Thompson did not improve her performance, prompting a written warning. Nor did Thompson present evidence of a similarly situated employee who was not in a protected class and was treated more favorably. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013). The District Court properly granted summary judgment to Anthem on this ground.

B.

Thompson also failed to show that she was subject to retaliation by Anthem. To establish a prima facie case of retaliation under NJLAD, Thompson must show that: 1)

---

[3] Thompson alleged that Sara Lafita, Anthem's Assistant Director, "didn't like my accent [or] how I spoke to her. Every time I met with her it was not a good interaction." App. 521.

[4] Additionally, although national origin discrimination can arise when individuals mock a plaintiff's accent, Thompson's colleagues' requests for her to repeat herself because they could not understand what she was saying do not, without more, constitute discrimination.

she engaged in a protected activity known by her employer; 2) her employer took adverse employment action against her after or contemporaneous with her protected activity; and 3) a causal link exists between the protected activity and the employer's adverse action. *Abramson v. William Paterson Coll.*, 260 F.3d 265, 286 & n.17 (3d Cir. 2001). If a general complaint of workplace hostility does not "explicitly or implicitly allege that [national origin] was the reason for the alleged unfairness [or hostility]," then the plaintiff has not engaged in statutorily protected activity. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).

As the District Court correctly concluded, Thompson failed to show that she was engaged in protected activity. According to Thompson, Anthem terminated her employment in retaliation for the two complaints she made about alleged discrimination. But Thompson did not point to national origin as the cause of any negative treatment. Even if we assume that Thompson engaged in protected activity, her retaliation claim fails for lack of causation. "[C]ausation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017) (internal quotation marks and citation omitted). And "[a]n employee cannot easily establish a causal connection between his protected activity and the alleged retaliation when he has received significant negative evaluations before engaging in the protected activity." *Ross v. Gilhuly*, 755 F.3d 185, 194 (3d Cir. 2014) (citation omitted). Thompson has not shown that anyone responsible for her termination was aware of her allegedly protected activity. By June 2015, Carter was no longer Thompson's manager, and the record does not support that Washington ever

6

learned of any complaints of discrimination. Moreover, the gaps between Thompson's two complaints and her termination—one year and two months, respectively—are too long to singlehandedly support an inference of retaliatory animus. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (holding that a gap of three weeks between complaint and termination did not support an inference of retaliatory animus on the employer's part). And the District Court appropriately determined that the "circumstances as a whole" could not show retaliatory animus. App. 28 (internal quotation marks and citation omitted). Indeed, Thompson and Washington discussed Thompson's declining performance for months before Thompson was fired. The "circumstances as a whole" thus suggest that Thompson was fired because she was not performing the duties of her job at the standards required by her employer.

* * *

For these reasons, we will affirm the District Court's order.