**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4565
_____

SHARELLE BRIDGES; ANTHONY BRIDGES,
on behalf of their son, D.B., a minor,
and individually on their own behalf,

Appellants

v.

SCRANTON SCHOOL DISTRICT

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 3-12-cv-02531)
District Judge: Honorable A. Richard Caputo
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 6, 2015
_____

Before: FUENTES, JORDAN, and VANASKIE, *Circuit Judges*

(Filed: March 14, 2016)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

This case involves alleged bullying, harassment, and racism by both students and a teacher in elementary schools in the Scranton School District. Appellants argue that the School District violated the Fourteenth Amendment and Title VI of the Civil Rights Act of 1964. While we are sympathetic to Appellants' arguments and dismayed by the alleged conduct in this case, Appellants' Fourteenth Amendment claims are ultimately foreclosed by this Court's decision in *Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013) (*en banc*), *cert. denied*, 134 S. Ct. 824 (2013). With respect to their Title VI claim, Appellants failed to present sufficient evidence to defeat summary judgment. As a result, we will affirm.

## I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

Appellants Sharelle Bridges, Anthony Bridges, and their son D.B., are African-Americans. During D.B.'s first grade year at Francis Willard Elementary School, Appellants contend that D.B. was physically bullied and harassed on four occasions by other students. Appellants met and spoke with the school's principal various times about this bullying, leading the principal to investigate the matter and change D.B.'s classroom. After changing classrooms, Mrs. Bridges indicated the bullying was "off and on," and that "[s]omeone would shout something at [D.B.] or hit him, but . . . as far as being jumped and kicked and stuff, it was resolved." App. 0307.

2

The next year, Appellants moved to a new home and D.B. transferred to Robert Morris Elementary School for the second grade. Despite changing schools, D.B. testified that he was physically bullied by fellow students and that on one occasion he fought off his attackers. Following the fight, D.B. testified that his second grade teacher, Mrs. Wilcha, gave him detention, but no detention was given to the other students who started the fight. D.B. also testified that another student tried to jab him in the eye with a pencil during class, but Mrs. Wilcha did nothing in response.

Appellants claim that Mrs. Wilcha verbally abused D.B. and treated him differently than the other students in his class.[1] Specifically, D.B. testified that Mrs. Wilcha was mean to him; would unfairly give him detention; would write his name on the board for no reason; threw or flung his desk on the floor on two occasions; turned the contents of his desk over and yelled at him to pick his things up; called him a "dummy," "stupid," and "lazy" on two occasions; made him sit by an open window on cold days and a closed window on hot days; moved his crutches after he had sustained an ankle injury and left him to "crawl" for them; and treated his strawberry allergy differently than another student's peanut allergy. In light of this treatment, D.B.'s parents had four meetings with Mrs. Wilcha and the school principal, Ms. Damiano. At the meetings, Mrs. Wilcha repeatedly referred to D.B. as a "gabber," and at one meeting when D.B. tried to explain himself, Mrs. Wilcha purportedly put her hand in his face suggesting that

---

[1] In addition to D.B., who is African-American, there was one biracial student in the class.

3

he be quiet. At the final meeting, Mrs. Bridges informed Ms. Damiano that Mrs. Wilcha threw D.B.'s desk on three occasions, but Ms. Damiano did not believe the claim. Mrs. Bridges requested a classroom change for D.B., but Ms. Damiano denied the request.

Mrs. Bridges never informed Ms. Damiano about Mrs. Wilcha's verbal abuse, but she did inform Mr. Louis Paris, the Director of Elementary Education, about Mrs. Wilcha's verbal abuse, bullying, and desk throwing. Mrs. Bridges told Mr. Paris that she did not want D.B. to finish the last two weeks of school because D.B. was scared.[2] Mr. Paris informed Mrs. Bridges that D.B. had to finish his final two weeks of school because it was a truancy issue. Nevertheless, Mr. Paris indicated that he would provide a boundary exception to D.B. so D.B could attend school elsewhere for the last few days of school. D.B.'s parents ultimately withdrew him from Robert Morris and enrolled him in Connections Academy—a cyber school—where D.B. intends to stay until college.

Appellants commenced this action against the School District, asserting claims under 42 U.S.C. § 1983 ("Section 1983") for deprivation of their substantive Due Process rights and under Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, *et seq.*, for alleged race discrimination. The District Court granted summary judgment to the School District on both claims finding that the facts fail to support Appellants' Section 1983 and Title VI claims. This appeal followed.

---

[2] Mrs. Bridges asserts that during second grade, D.B. began to have nightmares, he started wetting the bed, and he was frequently blinking. Additionally, a psychiatric evaluation of D.B. notes that he developed anxiety and depressive symptoms in reaction to the issues he went through during the second grade.

## II.

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting summary judgment, "applying the same test that the District Court . . . applied and viewing the facts in the light most favorable to the nonmoving party." *Schneyder v. Smith,* 653 F.3d 313, 318 (3d Cir. 2011) (citation omitted). We will affirm a grant of summary judgment where our review reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Interstate Outdoor Adver., L.P. v. Zoning Bd. of Twp. of Mount Laurel,* 706 F.3d 527, 530 (3d Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).

## III.

Appellants argue that the District Court improperly granted summary judgment. For substantially the same reasons stated in the opinion issued by the District Court, we conclude that, even drawing all permissible factual inferences in Appellants' favor, summary judgment was appropriate. We will address each of Appellants' claims in turn.

### A. Section 1983 Claims

In order to establish a claim under Section 1983, Appellants must demonstrate that a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States. *See Nicini v. Morra,* 212 F.3d 798, 806 (3d Cir. 2000) (en banc). Appellants' Section 1983 claim rests on the Due Process Clause of the Fourteenth Amendment and invokes its substantive component, which

5

"protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams,* 474 U.S. 327, 331 (1986)). Specifically, Appellants contend that D.B. was deprived of his liberty interest and right to bodily integrity as a result of (1) the student-on-student bullying in the first grade, and (2) the alleged verbal abuse and teacher-on-student bullying in the second grade.[3]  As the District Court correctly found, however, Appellants' arguments are foreclosed by this Court's decision in *Morrow.*

In *Morrow*, this Court stressed that the "Supreme Court has long established that '[a]s a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" 719 F.3d at 166 (quoting *DeShaney v. Winnebago Cty. Dep't of Social Servs.,* 489 U.S. 189, 197 (1989)).  Nevertheless, this Court has recognized that "[i]ndividuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1368 (3d Cir. 1992) (citation omitted)).  The District Court correctly noted that Appellants' claims of bullying by students in the first grade and verbal abuse by a teacher

---

[3] Appellants' separate argument that Mr. and Mrs. Bridges' due process rights were impaired has been waived, as it was not argued in the briefs on appeal. *See Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief[.]").

in the second grade implicate different issues. Accordingly, we will address them separately.

### 1. First Grade Student-on-Student Bullying

Despite the fact that there is generally not a duty for the state to protect citizens from the acts of private individuals, we acknowledged in *Morrow* that there are two exceptions: litigants can state a claim under Section 1983 if they (1) adequately allege "circumstances giving rise to a 'special relationship' . . . pursuant to *DeShaney*," or (2) "if their Complaint adequately alleges affirmative conduct on the part of the Defendants to support the 'state-created danger' exception that we adopted in *Kneipp* [*v. Tedder,* 95 F.3d 1199 (3d Cir. 1996)]." 719 F.3d at 167. Appellants contend that the District Court erred by finding that neither of these exceptions are applicable in this case. To the contrary, the District Court correctly concluded that Appellants' arguments are foreclosed by this Court's *en banc* decision in *Morrow*.

### a. The "Special Relationship" Exception is Not Applicable

Appellants first contend that the first grade student-on-student bullying violated D.B.'s substantive due process rights because a special relationship existed between the school and D.B. In *Morrow*, this Court noted that "every other Circuit Court of Appeals that has considered this issue in a precedential opinion has rejected the argument that a special relationship generally exists between public schools and their students." 719 F.3d at 170 (collecting cases). Against this backdrop, the majority in *Morrow* found that public schools, as a general matter, do not have a constitutional duty under the Due

7

Process Clause to protect students from other students. In so doing, the majority explicitly rejected the argument put forth by the Appellants here—that "a special relationship arose from compulsory school attendance laws and the concomitant *in loco parentis* authority and discretion that schools necessarily exercise over students, or the school's failure to do more to protect [its students.]" *Id*. at 171.

Although we disagreed with its reasoning, *see Morrow*, 719 F.3d at 186–96 (Fuentes, J., dissenting, joined by Jordan, Vanaskie, and Nygaard, JJ., and Ambro, J., in part), we are bound by the *Morrow* decision. *See Morrow*, 719 F.3d at 179 (Smith, J., concurring) ("'Stare decisis should be more than a fine-sounding phrase.' Yet it is nothing more than that if it does not require us, in the ordinary course, to adhere to a precedent with which we disagree.") (quoting *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 394 (1977) (Marshall, J., dissenting)). Accordingly, the District Court properly found that the School District did not have a duty, under the special relationship exception, to protect D.B. from other students' harmful actions.

### b. The "State Created Danger" Exception is Not Applicable

Next, Appellants contend that that the school is liable under the "state-created danger" theory. In *Morrow*, this Court reiterated "that liability may attach where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." 719 F.3d at 177 (citing *Kneipp,* 95 F.3d at 1205). Although there are four elements in a state-created danger claim, only two are at issue here: (1) whether the "state actor acted with a degree of culpability that shocks the

8

conscience;" and (2) whether "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Id.* (quoting *Bright v. Westmoreland Cty.*, 443 F.3d 276, 281 (3d Cir. 2006) (citations and internal quotation marks omitted)).

Here, the actions taken in response to the student-on-student bullying did not shock the conscience, as D.B.'s principal went out of her way to investigate the situation and make D.B. comfortable.   In fact, Mrs. Bridges' own testimony seemingly approved of the school's actions. *See* App. 0307 (Mrs. Bridges Dep.) (noting that the principal "was very upset about the incident[;]" that "after the meeting, she apologized again[, and s]he stormed off in the direction, . . . towards the cafeteria to talk to and try to investigate, see what was going on[;]" and that Mrs. Bridges was "fine with" the class being changed as a result of the investigation).

Additionally, and as the District Court noted, Appellants' student-on-student bullying claims rest on the contention that it was the School District's *inaction* that put D.B. at an additional risk of harm.  *See* Appellants' Br. 26 (arguing the school "was deliberately indifferent to the harassment and bullying[.]").  This argument was also explicitly rejected by *Morrow*.  719 F.3d at 178 ("The dissent argues that Defendants' failure to expel [a student] constitutes an affirmative 'exercise of authority' that contributed to the danger the Morrows faced, thereby triggering a duty to protect. . . . [W]ere we to accept the dissent's formulation here, the state-created danger *exception*

9

would swallow the rule.") (footnote omitted). Accordingly, the District Court correctly found Appellants failed to establish a claim under a state-created danger theory.

### 2. Second Grade Teacher-on-Student Verbal Abuse and Bullying

Appellants also argue that Mrs. Wilcha and the School District officials violated D.B.'s rights in the second grade in light of Mrs. Wilcha's verbal abuse and bullying. When evaluating the actions of public school officials, this Court applies the "shocks the conscience standard to federal claims[.]" *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001). Here, Appellants argue Mrs. Wilcha and the School District violated D.B.'s rights under the shocks the conscience standard and that the District should be liable for its failure to properly supervise and train its teachers and principals. Appellants contend that the District Court erred by rejecting their due process and failure to train arguments. To the contrary, the District Court rightly concluded Appellants' arguments are foreclosed by this Court's precedent.

### a. Appellants' Due Process Argument Fails

Substantive due process claims based upon "[n]on-physical types of harassment, including verbal abuse," are subject to the "shocks the conscience" analysis. *See S.M. v. Lakeland Sch. Dist.,* 148 F. Supp. 2d 542, 547 (M.D. Pa. 2001), *aff'd*, 33 F. App'x. 635 (3d Cir. 2002). Mindful of this stringent liability standard, Mrs. Wilcha's conduct does not rise to the level of a constitutional violation. *Cf. Abeyta v. Chama Valley Indep. Sch. Dist.,* 77 F.3d 1253 (10th Cir. 1996) (noting that a teacher calling a sixth grade student a prostitute in front of her class for over a month-and-a-half did not rise to the level of a

10

substantive due process claim); *Doe v. Gooden,* 214 F.3d 952 (8th Cir. 2000); *Costello v. Mitchell Public Sch. Dist.,* 266 F.3d 916 (8th Cir. 2001); *Wyatt v. Fletcher,* 718 F.3d 496 (5th Cir. 2013). Therefore, the District Court correctly found that Appellants cannot recover under a due process theory.

### b. Appellants' Failure to Train Argument Fails

To hold the School District liable for a failure to train under Section 1983, Appellants must demonstrate that there was a constitutional violation and that the violation was caused by the School District's policy or custom. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91 (1978). Here, Appellants cannot recover from the School District under Section 1983 for a failure to train because there was no underlying constitutional violation. *See Kneipp*, 95 F.3d at 1212 n.26 ("Of course, had there not been an underlying constitutional violation in the first instance, plaintiff's 'failure to train' claim against the City would not stand.") (citing *Canton*, 489 U.S. at 388–89, and *Collins v. City of Harker Heights,* 503 U.S. 115, 123–24, (1992)). Thus, the District Court rightly found that Appellants could not recover under a failure to train theory. [4]

---

[4] "Appellants incorporate by reference those arguments made . . . concerning 'failure to act' (which Appellants argue is analogous to failure to train)[.]" Appellants' Br. 38. However, as we already explained, *Morrow* explicitly rejected the idea that the School District's failure to act could support a Due Process claim. *See Morrow*, 719 F.3d at 178. Consequently, if Appellants' failure to act argument is "analogous" to their failure to train argument, then the failure to train argument necessarily fails.

## B. Title VI Claim

Finally, Appellants contend that the School District created a racially hostile environment in violation of Title VI. Title VI prohibits intentional discrimination based on race in any program that receives federal funding. *See* 42 U.S.C. § 2000d; *Alexander v. Sandoval,* 532 U.S. 275, 282–83 (2001). Pursuant to Title VI, Appellants may sue the School District for money damages for a failure to address a racially hostile environment. *See Saxe v. State Coll. Area Sch. Dist.,* 240 F.3d 200, 206 n.5 (3d Cir. 2001). Appellants may recover for alleged "severe, pervasive, and objectively offensive" harassment if the school "acts with deliberate indifference to known acts of harassment." *Davis v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629, 633 (1999). The School District can only be held liable for a Title VI claim of racial discrimination when its response is "clearly unreasonable in light of the known circumstances." *Id.* at 648. Although Appellants argue that they have successfully established a claim for hostile environment, their argument is unavailing.

Appellants must raise at least an inference of discrimination to move forward with their Title VI claim. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 276 n.45 (3d Cir. 2014) (noting that the parties' respective burdens in a Title VI disparate impact case should follow those developed in Title VII cases); *see also id*. at 314 (McKee, C.J., concurring in part and dissenting in part) (clarifying "the appropriate standard for liability under Title VI and § 1983" and making it clear that plaintiffs must show an adverse action that gave "rise to an inference of discrimination."). Appellants argue that they

12

raised an inference of discrimination because D.B. was the only African-American in his class and the District Court "demonstrated naiveté as to the more subtle, but no less destructive, racism practiced in the purportedly 'post-racial' twenty-first century." Appellants' Br. 2.[5]  But while Appellants devote a portion of their brief to discussing "the realities of American racism[,]" *id.* at 2–4, the fact remains that Appellants failed to show Mrs. Wilcha did or said anything that could be reasonably construed as racially motivated.

This Court is well aware that racial discrimination need not be overt to create a hostile environment.  *Cf. Blunt*, 767 F.3d at 275 ("[W]e have recognized that individuals who violate the law based on discriminatory motives sometimes do not leave a trail of direct evidence, but instead 'cover their tracks' by providing alternate explanations for their actions[.]").  Given the subtle forms that racism may take, "we have found that a plaintiff may establish a prima facie factual foundation of discrimination by drawing reasonable inferences from certain objective facts that are generally not in dispute." *Id*. (citations omitted).

Here, the fact that Mrs. Wilcha called D.B. a "gabber" is not in dispute. Appellants argue that this Court should "substitute the word 'uppity' for 'gabber'" because they assert this makes it "clear that D.B. was subject to racial discrimination

---

[5] There was, as we previously noted, a biracial student in the class.  That student may well take exception to the claim that D.B. was the only African-American.  A biracial child may also identify as Black—just as that child may identify as White, Asian, Latino, Native American, or multiracial.

which harmed him physically, and deprived him of educational opportunities." Appellants' Reply Br. 4–5. Specifically, Appellants argue that "gabber" is "but one euphemism" for the word "uppity." *See id*. at 4 n.6. If this were the case, then Mrs. Wilcha repeatedly calling D.B. a "gabber" could arguably be perceived to have been racially motivated. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996) (noting "the use of 'code words' can, under circumstances" show an intent to discriminate). It is not the case, however, because here "gabber" is not akin to "uppity."

The word "gabber" in everyday parlance means "talkative"; there is no support in the record for the assertion that the use of the term "gabber" was racially motivated— even if one accepts the assertion that D.B. was the only African-American in his class.[6] Thus, because "gabber" means "talkative," and no racially-charged code words were used, we cannot draw an inference of racism from Mrs. Wilcha's statements. *Cf. Aman*, 85 F.3d at 1083 (implying that facially neutral statements must "send a clear message and carry the distinct tone of racial motivations and implications" to be "seen as conveying

---

[6] Appellants cite nothing to support their proposition that the term "gabber" is akin to the racially-charged term "uppity." While "[t]here are no talismanic expressions which must be invoked as a condition-precedent to the application of laws designed to protect against discrimination[,]" we have made it clear that the use of code "words themselves are only relevant for what they reveal—the intent of the speaker." *Aman*, 85 F.3d at 1083. Focusing on the intent of the speaker here, the word "gabber" was not used to indicate D.B. was "uppity." Instead, D.B. himself indicated that "gabber" was used to refer to "someone that is very talkative, always has something to say[.]" App. 0216 (D.B. Dep.). Thus, by focusing on Mrs. Wilcha's use of the term "gabber," Appellants actually raise the inference that Mrs. Wilcha punished D.B. for being talkative; not for his race.

14

the message that members of a particular race are disfavored[.]").  Accordingly, the

District Court rightly granted summary judgment on this claim as well.

## IV.

For the foregoing reasons, the District Court properly granted summary judgment

on all of Appellants' claims.  Therefore, we will affirm the judgment of District Court.

15