**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1628
_____

FREEDOM MEDICAL SUPPLY INC,
Individually and On Behalf of All Others Similarly Situated,
Appellant
v.

STATE FARM FIRE AND CASUALTY COMPANY;
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:12-cv-1078)
District Judge: Honorable Joel H. Slomsky
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 9, 2014

Before: VANASKIE, COWEN, and VAN ANTWERPEN, *Circuit Judges*.

(Opinion Filed: June 8, 2016)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VANASKIE, *Circuit Judge.*

In 2012, Appellant Freedom Medical Supply, Inc. ("Freedom") commenced a class action against the Appellees (collectively "State Farm"), alleging that State Farm violated the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. § 1701 *et seq.*, in determining the "usual and customary charge" for an electrical muscle stimulator ("EMS") and a portable whirlpool. The District Court granted summary judgment in favor of State Farm, finding that State Farm was not required to accept the amount charged by Freedom for these devices as the "usual and customary charge." On appeal, Freedom reiterated its argument that Pennsylvania law constrained State Farm to accept Freedom's charges as the "usual and customary charge." We petitioned the Supreme Court of Pennsylvania to accept certification of the following question of state law:

> May an insurer use methods not specifically identified in Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. § 1701 *et seq.*, to calculate the "usual and customary" charge for devices and services not listed on the Medicare Fee Schedule for purposes of determining the amount to be paid to providers of those devices and services?

*Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, No. 14-1628, Certification Order at 11 (3d Cir. Dec. 19, 2014).

The Pennsylvania Supreme Court granted our petition, answered our question in the affirmative, and relinquished jurisdiction to us. Having carefully considered the

2

holding of the Pennsylvania Supreme Court and the parties' submissions, we will now affirm the District Court's grant of summary judgment in favor of State Farm.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

A.

Payments to medical providers for the provision of products and services to automobile accident victims are governed by the MVFRL, as amended by the Act of February 7, 1990, P.L. 11, No. 6 ("Act 6" or "The Act"). Act 6 creates two schemes for reimbursement—one for products and services listed in the Medicare Fee Schedule and one for those not listed in the Medicare Fee Schedule. *See* 75 Pa. Cons. Stat. § 1797(a). For products and services listed in the Medicare Fee Schedule, the Act prohibits medical providers from accepting payment greater than 110% of the charge in the Medicare Fee Schedule. *Id.* For those products and services not listed in the Medicare Fee Schedule— the issue in this case—"the amount of the payment may not exceed 80% of the provider's usual and customary charge." *Id*.

Although the Act does not define the phrase "usual and customary charge," the Act's implementing regulations provide both a definition and guidance for the phrase. As it pertains to this discussion, 31 Pa. Code § 69.3 defines "[u]sual and customary charge" as being "[t]he charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic

3

area where the treatment, accommodation, product or service is provided." The regulations further provide that "[i]n calculating the usual and customary charge, an insurer may utilize the requested payment amount on the provider's bill for services or the data collected by the carrier or intermediaries to the extent that the data is made available."[1] 31 Pa. Code § 69.43(c).

Neither EMSs nor portable whirlpools are included on the Medicare Fee Schedule. Accordingly, Freedom is only entitled to payment in the amount of 80% of the "usual and customary charge" for these devises. From 2010 through 2011, Freedom billed patients $1,525 for an EMS. After 2012, Freedom charged $1,600 for an EMS. Based on these amounts, Freedom sought payment from State Farm of $1,200 and $1,280. For the whirlpool, Freedom charged patients $525 and sought payment from State Farm of $420. Believing that the "usual and customary charge" was far lower than the amounts sought by Freedom, State Farm undertook a survey by making open-market purchases of the same devices from several vendors.

Specifically, in June 2010, State Farm began a review to determine the average open market cost of the supplied devices, as opposed to relying on the prices charged by

---

[1] The regulations define "carrier" as an "organization with a contractual relationship with HCFA [Health Care Financing Administration, renamed the Centers for Medicare and Medicaid Services in July, 2001] to process Medicare Part B claims." 31 Pa. Code § 69.3. An "intermediary" is an "organization with a contractual relationship with HCFA to produce Medicare Part A claims." *Id.* Because only Part B claims are involved in the present appeal, the term "intermediary" is irrelevant. Furthermore, State Farm did not make use of data collected by a carrier.

Freedom. To do so, State Farm omitted all prices charged by several existing medical providers for such devices, believing those charges to be inflated. Then, State Farm purchased EMSs from ten different vendors, including internet retailers located outside of Pennsylvania. State Farm concluded that the average price for an EMS was $151.10, requiring reimbursement of $120.88—as opposed to the $1,280 sought by Freedom.[2] State Farm similarly purchased whirlpools from eight different vendors, yielding an average price of $97.19 and a corresponding reimbursement of $77.75—as opposed to the $420 sought by Freedom.[3] State Farm's approach is not explicitly authorized by statute or regulation.

B.

Freedom brought suit on February 3, 2012, in the Court of Common Pleas for Philadelphia County. The action was then removed to the Eastern District of Pennsylvania on February 28, 2012. The Complaint contains two claims. Count One alleges violations of 75 Pa. Cons. Stat. §§ 1716 and 1797 for failure to adequately reimburse Freedom under the MVFRL. Count Two alleges a claim for negligence. The premise of Freedom's claims was that 31 Pa. Code § 69.43(c) mandated that State Farm calculate payments to Freedom based either upon Freedom's charges to its patients or upon data collected by carriers.

---

[2] Freedom purchased the EMSs from wholesalers for roughly $20 to $26 each.

[3] Freedom purchased the whirlpools from wholesalers for about $40 each.

On February 1, 2013, the District Court denied Freedom's motion to compel discovery regarding State Farm's reimbursement levels in other states. On February 12, 2014, the District Court decided cross motions for summary judgment in favor of State Farm, reasoning that 31 Code § 69.43(c) presented two "illustrative and not mandatory" methods for calculating a provider's usual and customary charge. *See Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, No. 12-1078, 2014 WL 626430, at *4–5 (E.D. Pa. Feb. 18, 2014). As such, the District Court concluded that State Farm's calculation method—using independent research of medical device vendors—was reasonable and complied with the purpose and spirit of Section 69.43(c), even though it was not one of the two prescribed methods. *Id.* at *6–7. The District Court then found that State Farm otherwise complied with Code Section 69.3 when calculating the usual and customary charge for the EMSs and Whirlpools. In reaching this conclusion, the District Court looked to *Hospital Association of Pennsylvania, Inc. v. Foster*, 629 A.2d 1055 (Pa. Commw. Ct. 1993), to explain "that 'usual and customary' may refer to a single provider seeking reimbursement, or an aggregate or average of multiple providers' charges." *Freedom Med. Supply*, 2014 WL 626430, at *6 (citing *Foster*, 629 A.2d at 1058). The District Court explained that State Farm's "research relied on a group of providers of similar training, experience, and licensure in accordance with Section 69.3" and that the providers "were similarly situated [] providers." *Id.* (citation omitted). The

6

District Court held that State Farm's calculation method thus complied with the MVFRL and its corresponding regulations as a matter of law.[4] This appeal followed.

## C.

On appeal, the parties vigorously disputed the question of whether State Farm's calculation method was permitted by state law, an issue that had not been decided by the Supreme Court of Pennsylvania. Accordingly, we certified that question to the Commonwealth's highest court for guidance. *See generally Freedom Med. Supply*, No. 14-1628, Certification Order. The Pennsylvania Supreme Court, agreeing with the District Court, concluded that 31 Pa. Code § 69.43(c) "permits, but does not require, insurers to" calculate a provider's usual and customary charge using the two bases provided within the regulation. *See Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, 131 A.3d 977, 978 (Pa. 2016); *accord Freedom Med. Supply*, 2014 WL 626430, at *5. The court found "the regulations at issue reasonably capable of both constructions offered by the parties," *Freedom Med. Supply*, 131 A.3d at 983, but ultimately concluded that "State Farm's argument is more persuasive." *Id.* at 984.

In support of its holding, the court noted that under Freedom's construction of Sections 69.43(c) and 69.3, "reimbursements would have to be calculated based on the particular provider's bill." *Freedom Med. Supply*, 131 A.3d at 985. Wary of the fact

---

[4] Because it found that State Farm properly calculated the usual and customary charge, the District Court also found that Freedom's negligence claim failed as a matter of law. *See Freedom Med. Supply*, 2014 WL 626430, at *9.

that, under Freedom's approach, "a particular provider's bill may be well below or well above the charge most often made by similarly-situated providers in the geographic region," the court explained that "the only way to bring Section 69.3 and Section 69.43(c) into harmony is to read the latter as *permitting* insurers to 'utilize' the provider's bill or data from the carrier," but not requiring insurers to do so. *See id*. The court rejected "Freedom's proposition that permitting insurers to conduct a review of market data in calculating reimbursements will lead to insurance industry chicanery and market uncertainty." *Id.* The court explained that "even if [State Farm] is not bound to calculate reimbursements predicated on the bases provided in Section 69.43(c), it must nevertheless comply with the remainder of the MVFRL and the Department's regulations, including Section 69.3." *Id.* The Court noted, however, that "the question of whether State Farm has abided by the remaining provisions of the MVFRL, and particularly Section 69.3's definition of 'usual and customary charge,' is not before this Court," and it "offer[ed] no view" as to whether State Farm complied with the remaining provisions of the MVFRL. *See Id.* at 985 n.8. The Pennsylvania Supreme Court then relinquished jurisdiction to us.[5]

---

[5] After the filing of the Pennsylvania Supreme Court's opinion, we instructed counsel to file letter briefs setting forth their positions on how the Pennsylvania Supreme Court's decision should affect the disposition of this case.

II.[6]

The only question before us now is the issue not addressed by the Pennsylvania Supreme Court: "whether State Farm has abided by the remaining provisions of the MVFRL, and particularly Section 69.3 . . . ." *Freedom Med. Supply*, 131 A.3d at 985 n.8. We conclude, like the District Court, that State Farm's method for determining the usual and customary charge for Freedom's insurance reimbursement was in compliance with the remaining provisions of the MVFRL, including Section 69.3.

Freedom asserts that the District Court erroneously relied on *Foster* in order to interpret the phrase "usual and customary" as used in Section 69.3. In *Foster*, the court addressed the validity of "section 69.3 of the final regulations which sets forth the definition of the phrase 'usual and customary charge.'" 629 A.2d at 1057. The Pennsylvania Hospital Association asserted that Section 1797's use of "the phrase, 'the provider's usual and customary charge,'" meant "a particular charge made by a particular provider, not an aggregate or average of multiple providers' charges." *Id.* at 1058.

---

[6] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review the District Court's grant of summary judgment *de novo*, applying the same standard the District Court applied." *Alcoa, Inc. v. United States*, 509 F.3d 173, 175 (3d Cir. 2007) (citation omitted). Accordingly, we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Interstate Outdoor Advert., L.P. v. Zoning Bd. of Twp. of Mount Laurel*, 706 F.3d 527, 530 (3d Cir. 2013) (citation and internal quotation marks omitted). We may affirm a grant of summary judgment where the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted).

9

Rejecting this contention, the Commonwealth Court ruled that the Pennsylvania Insurance Commissioner did not abuse her discretion in interpreting Section 1797 to provide that "the reimbursement level for the single provider [may be] based on an aggregate of charges for several similarly situated providers." *Id.* at 1059. Thus, contrary to Freedom's claim, *Foster* provides clear guidance on the meaning of "usual and customary charge," and the District Court properly determined that the phrase "usual and customary" may refer to an aggregate or average of multiple providers' charges.

Next, Freedom argues that the District Court erroneously found that the MVFRL did not require State Farm to rely on data provided by "Billing Providers," the Pennsylvania Workers Compensation Law, and other data sources to calculate the usual and customary charge. We agree with the District Court that consideration of such data was not required because "the MVFRL and related regulations do not state which providers should or should not be included in calculating a usual and customary charge." *Freedom Med. Supply*, 2014 WL 626430, at *7. As the District Court noted, "[n]othing in the MVFRL or accompanying regulations . . . requires that insurers must consider the Workers' Compensation Fee Schedule, or links the Workers' Compensation statute to the MVFRL."[7] *Id.* at *8. With respect to Freedom's assertion regarding "Billing Providers," we note that the Pennsylvania Supreme Court rejected the idea that "Billing Provider" data must be considered. *See Freedom Med. Supply*, 131 A.3d at 985 (explaining that the

---

[7] Indeed, Freedom, itself, concedes "that Act 6 does not mandate adoption of the Workers Compensation Fee Schedule." Appellant's Br. at 46.

"legislature's adoption of Act 6" did not "mandate[] an assessment based on whatever providers deemed an appropriate amount to bill"); *see also id.* (explaining that "Freedom's insurer manipulation concern" was "of minor weight in comparison" to "the effects of interpreting Section 69.43(c) as potentially granting providers the right to set their own rates of reimbursement").[8]

Finally, Freedom argues that State Farm failed to look to "persons or entities actually rendering treatment in the Commonwealth in connection with claims under a Pennsylvania insurance policy." Appellant's Letter Br. of Mar. 17, 2016, at 2 (citations omitted). In other words, Freedom contends that State Farm failed to comply with the MVFRL because the vendor charges State Farm considered were not involved in the MVFRL reimbursement process. Again, we disagree.

As the District Court observed, the vendors State Farm relied upon "were from Berks, Bucks, Chester, Delaware, Montgomery, and Philadelphia counties in Pennsylvania, and Camden and Gloucester counties in New Jersey, and are located in the

---

[8] Freedom argues that it should have been able to obtain out-of-state data to buttress its argument that State Farm violated the MVFRL in calculating the amount it paid for the EMSs and whirlpools. Reimbursement data from states other than Pennsylvania would have little, if any, relevance on what similarly situated providers in Freedom's geographic area charge for the devices. Accordingly, the District Court did not abuse its discretion by denying State Farm's motion to compel such data. *See Washington v. Hovensa LLC*, 652 F.3d 340, 348 n.6 (3d Cir. 2011) (noting that we review such discovery denials "for abuse of discretion"); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 818 (3d Cir. 1982) (explaining we should "not upset a district court's conduct of discovery procedures absent a demonstration that the court's action made it impossible to obtain *crucial evidence*") (emphasis added).

11

geographic area where the EMS and Whirlpool are sold by Freedom Medical." *Freedom Med. Supply*, 2014 WL 626430, at *6. Notably, the Pennsylvania Supreme Court did not foreclose the use of data from vendors who were not involved directly in the MVFRL reimbursement process. *See Freedom Med. Supply*, 131 A.3d at 985 (explaining that Section 69.43 permits "insurers to 'utilize' the provider's bill or data from the carrier as a relevant, *but not controlling,* measure of the appropriate 'usual and customary charge' for the product at issue") (emphasis added). Instead, data from other vendors may be considered because "the General Assembly's use of the language 'usual and customary,' . . . suggests that *market data* and industry custom will come to bear on the appropriate amount of reimbursement." *Id.* (emphasis added).

Consideration of such market data is consistent with the MVFRL's "two major policy goals: providing coverage for injured persons and providing it at a reasonable cost to the purchaser." *Id.* at 984 (citation omitted). Thus, as the District Court explained, in order "for State Farm to conduct unbiased research of average prices not subject to inflation, it was necessary to examine providers not involved in the insurance reimbursement process."[9] *Freedom Med. Supply*, 2014 WL 626430, at *6.

---

[9] In its letter brief, Freedom argues that State Farm relied upon the wrong data for two reasons: (1) it "discard[ed] data from Pennsylvania providers" and "selected charges of vendors from New Jersey, California, Texas, Illinois, New Hampshire, and Washington State, none of which sold under the MVFRL," and (2) the evidence shows one vendor—VSP Medical Supply—"purposely is not part of the market." Appellant's Letter Br. of Mar. 24, 2016, at 2 (citation omitted). But there is simply no basis for Freedom's claim that State Farm discarded Pennsylvania provider data because it is undisputed that the majority of providers relied upon were within Freedom's geographic

In the end, Freedom has not shown that State Farm failed to comply with the MVFRL. This is particularly so, considering the fact that Freedom (1) presented no evidence showing that the providers State Farm considered lacked the same "training, experience or licensure" as Freedom in providing the products at issue, and (2) presented no expert testimony or evidence in the District Court showing that State Farm's methodology failed to yield a usual and customary charge in this case.

III.

For the foregoing reasons, we find that State Farm complied with the MVFRL and its corresponding regulations. Accordingly, we will affirm the order of the District Court.

---

area. Moreover, with respect to the concern about VSP Medical Supply, the District Court aptly explained that State Farm, "used other providers in [its] research in addition to VSP," such that "including VSP was not in error." *Freedom Med. Supply, Inc.*, 2014 WL 626430, at *7.